William L. TEAGUE, Appellant,

v.

UNITED TRUCK SERVICE, Francis J. Tolbert, Owner, and Ray Evans Johnson, Appellees.

No. 43904.

Supreme Court of Oklahoma.

June 20, 1972.

Dick Bell, Seminole, Horsley, Epton, Culp & Butts, Wewoka, Frank Seay, Seminole, for appellant.

Bishop & Wantland, Seminole, for appellees.

BARNES, Justice.

This appeal arose out of an action brought by the above named Appellant against the above named Appellees to recover damages allegedly sustained in a collision between his 1960-Model Mercury Station Wagon and a 1967-Model "bobtailed" White diesel tandem truck owned and/or operated by Appellees. The parties will hereinafter be referred to by surname and/or trial court designations of "plaintiff" and "defendants".

Just before the collision, at about 4:30 p. m., of a rainy October day, the truck, driven in a southerly direction by the defendant Johnson, came up behind plaintiff's station wagon, traveling the same direction, on State Highway No. 59, approaching Salt Creek bridge some 3 miles northeast of St. Louis, Oklahoma. The plaintiff stopped, or almost stopped, his vehicle just north of the bridge because a pedestrian, followed by a Chevrolet, was attempting to drive a calf across the bridge from the south. As the truck overtook plaintiff's vehicle, defendant Johnson applied his brakes and veered off to the right of the roadway, but the left rear corner of his truck's tail board struck the station wagon's right rear corner. The Chevrolet was driven by a Mrs. Rosturn and the calf was being herded on foot in front of it by Mrs. Rosturn's younger brother, Luther Martin.

After the collision, plaintiff complained of personal injuries and was taken to a Seminole hospital. A Highway Patrolman, Mr. Don Kirk, investigated the accident.

In his petition, plaintiff alleged that as a result of the collision he was damaged in the amount of $264.05 for the repair of his station wagon, and $113,578.20 for personal injuries. He also alleged that the defendant was negligent in his failure to keep a proper lookout ahead of the truck, his truck's following the station wagon too closely in violation of 47 O.S.1961, § 11–310, and the driving of the truck at a speed greater than would permit it to be brought to a stop "within the assured clear distance ahead" in violation of 47 O.S.1961, § 11–801.

In their answer, defendants alleged that negligence of plaintiff in stopping his vehicle on the traveled portion of the highway in violation of Oklahoma Statutes caused, or contributed to, the happening of the accident. As a further defense, defendants alleged that the defendant driver, Johnson, was confronted with a sudden emergency and that he acted in said emergency as any reasonable or prudent person would have done.

Subsequently, defendants moved that Mrs. Rosturn and Luther Martin be made additional defendants in the case, and, after their motion was denied, filed an amended answer in which they alleged that the primary cause of the accident was the combined negligence of those parties in driving the calf across the bridge in the face of oncoming traffic, and plaintiff's negligence "in stopping his automobile on the traveled portion of the highway and in not keeping a lookout to his rear."

At the trial, it was established that on the day of the accident it was raining and

the highway, a 2-lane asphalt or black-topped one, 22 feet wide, was slick. Defendant Johnson testified that he saw plaintiff's station wagon and Mrs. Rosturn's Chevrolet when his truck was 400 feet away, but, despite his truck's speed of only 40 miles per hour and brakes in good condition, because of his truck's skidding on the slick pavement when its brakes were applied, he was unable to stop it before reaching the rear of plaintiff's station wagon. Johnson further testified that when he realized he could not completely stop the truck in that distance and that Mrs. Rosturn's Chevrolet was approaching in the other traffic lane, he ran his truck off the embankment just behind the station wagon in an effort to avoid colliding with either. He claimed the truck was not traveling over 3 or 5 miles per hour at the time it struck the station wagon's right rear corner. Johnson was examined about a deposition he had given earlier in which he stated, among other things, that he was 8/10ths of a mile from plaintiff's station wagon when he first saw it near the bridge and started applying his truck's brakes. During the witness' redirect examination, however, it was shown that in another part of his deposition he stated that he had been confused and had mistakenly stated the distance was 8/10ths of a mile when he intended to say it was 1/10th of a mile. Johnson further testified that he had ascertained the distance of 400 feet by a measurement he made after the accident. The Highway Patrolman, Kirk, testified, among other things, that when he came to investigate the accident, Johnson told him that, as he drove down the hill approaching the bridge, he didn't realize the station wagon had stopped, until it was too late to avoid hitting it.

According to plaintiff's evidence, he had not stopped the station wagon, but was driving it very slowly toward the bridge's north end at the time it was struck from the rear by the truck. Plaintiff's testimony was to the further effect that he did not see the truck behind his station wagon until the collision occurred.

Mrs. Rosturn was a witness for the defendants and testified that, as she drove her Chevrolet north across the bridge behind her 19-year-old brother, Luther Martin, and the calf, plaintiff's station wagon was in the traveled portion of the highway approaching the bridge from the north. She further testified that she did not see the station wagon move as the truck came up behind it and nosed into the ditch, and did not think it had been struck. Her testimony tended, in general, to support Johnson's testimony that plaintiff's station wagon was boosted forward no more than 5 feet, if any, by the collision's impact. With toy cars, this witness demonstrated to the jury the positions of the station wagon and the truck when the collision occurred. She also testified, without objection, that she and her older brother, the calf's owner, had discussed the likelihood of his responsibility for the accident. Much of defendants' evidence was calculated to show that plaintiff's physical disability, if any, was the result of previous accidents he had had.

At the close of the evidence, both parties moved for a directed verdict. Plaintiff's motion was specifically predicated on the ground that the evidence showed that the truck driver, Johnson, had been guilty of negligence per se in failing to stop his truck within the assured clear distance ahead, in violation of the Oklahoma Statute, supra. The court denied both motions for directed verdicts and submitted the cause to the jury under instructions, which included its Instruction No. 15 on unavoidable accident. Thereafter, the jury returned a general verdict for defendants, and judgment was entered accordingly. After the overruling of his motion for a new trial, plaintiff lodged the present appeal.

For reversal of the trial court's judgment, plaintiff, taking the position that defendants had no legal defense, contends that the trial court erred in overruling his motion for a directed verdict. To support his position, plaintiff's brief quotes the

aforementioned portions of Johnson's deposition (about which he was cross-examined), as well as portions of his testimony at the trial, and that of the Highway Patrolman, Kirk. By way of explaining the adverse verdict, plaintiff opines that the trial court's Instruction No. 15 "may have" had a part in confusing the jury; and, by quoting the first two paragraphs of the syllabus in Huey v. Stephens, Okl., 275 P. 2d 254, he implies that the court should not have given the jury that instruction. Plaintiff's brief also sets forth extensive quotations from Davis v. Kunkle, 302 Ky. 258, 194 S.W.2d 513, and Wilson v. Sorge, 256 Minn. 125, 97 N.W.2d 477, as if the Court in this case should have directed a verdict for him, as was done for the plaintiffs in those two cases.

We have examined both of the last cited cases and find neither of them analogous to the present case because of crucial differences in their evidence. In Wilson, the defendant introduced no evidence in opposition to plaintiff's evidence on the issue of his liability. In Davis, the Court stated: "We can not escape the conclusion that the only reasonable inference to be drawn from the evidence is that the proximate cause of the accident was the [defendant's negligence]."

■ We cannot say that this case presented no jury question as to who was responsible for the collision, or that it was the trial court's prerogative to rule that negligence on Johnson's part in violating Section 11–801(a) was, as a matter of law, the proximate cause of the collision, as said court was asked to do in plaintiff's motion for a directed verdict. The Court of Appeals was evidently of the same opinion, but remanded this case to the trial court for a new trial, upon concluding that the giving of Instruction No. 15 was prejudicial error.

■ Instruction No. 15 told the jury that its verdict should be for the defendants only if it found that plaintiff's injuries, if any, were the result of an unavoidable or inevitable accident "and that such accident happened without fault of the defendants, . . ." Thus, the issue of whether or not the collision was an unavoidable accident was not submitted to the jury *separately and independently* from the question of whether or not negligence on the part of the defendants was involved. On the contrary, Instruction No. 15 made any finding by the jury that the collision was an unavoidable accident dependent upon its finding that the defendants were without "fault" (the equivalent of negligence) in the matter. Therefore, rather than being controlled by the authorities we followed in Huey v. Stephens, supra, we think the question here is the same as the one we dealt with in Hayward v. Ginn, Okl., 306 P.2d 320. There, we recognized that "there was no legal basis for submitting to the jury the issue of unavoidable accident *as a separate and independent* defense", but we concluded that the unavoidable accident instruction involved there "with the definition given . . . in connection therewith" was harmless under the circumstances. We have arrived at the same conclusion in this case. As Instruction No. 15 was worded, it did not constitute a misinterpretation of the law, nor contain, on its face, any erroneous statement of fundamental law. In this connection, notice Mason v. McNeal, 187 Okl. 31, 100 P.2d 451. As in the instance of other errors not inherently prejudicial, unlike those from which, by their nature, one of the litigants obtains "beneficial prejudice (see Montgomery v. Murray, Okl., 481 P. 2d 755, 760, 761, and the cases cited therein), claimed errors in instructions must be shown to have probably affected the verdict adversely to the complaining party, before this Court will treat them as reversible errors. Missouri-Kansas-Texas Ry. Co. v. Harper, Okl., 468 P.2d 1014, and Missouri-Kansas-Texas Ry. Co. v. Hayes, Okl., 445 P.2d 249. As quoted from Badgwell v. Lair, Okl., 325 P.2d 968, 971, in the Montgomery case:

"Probability of a change in the outcome of a lawsuit is the test of prejudice

**384**

this court has long employed in alleged errors of practice and procedure."

And in Hatcher v. Morris, Okl., 441 P.2d 462, 465, we said:

"Whether the verdict is sufficiently supported by the evidence is usually the best criterion of whether the complaining party has suffered prejudice from the court's instructions; . . ."

In Tucker v. Colorado Indoor Trap Shoot, Inc., Okl., 471 P.2d 912, 919, this Court said:

"It is well settled in this jurisdiction that a judgment will not be disturbed because of alleged erroneous instructions, *unless it appears reasonably certain* that the jury was misled thereby, to the prejudice of the complaining party." (Emphasis added)

Here, as already noted, there was evidence from which the jury might have reasonably concluded that plaintiff was guilty of contributory negligence or that the negligence of one or more persons, other than the defendants, was the proximate cause of the collision. Furthermore, in addition to the manual demonstrations of Mrs. Rosturn, already noted, the judge and jury had the benefit of certain depictions of the scene of the collision and the positions of the two involved vehicles before and after the collision that are not in the record before us. We have previously recognized that such evidence places the trier of the facts in a better position, than the reviewing court, to arrive at a just determination. In this connection, notice Townley v. Casaba, Okl., 474 P.2d 414, 416, and Gessel v. Smith, Okl., 435 P.2d 587, 591.

On the basis of the record, and arguments, submitted by plaintiff, we cannot say "it appears reasonably certain" that the jury, by reason of the trial court's giving it Instruction No. 15, was misled to the extent of returning a verdict that it otherwise would not have returned. Accordingly, the judgment of the trial court, in conformity with said verdict, is hereby affirmed and the decision of the Court of Appeals is reversed.

BERRY, C. J., and WILLIAMS, JACKSON, IRWIN and LAVENDER, JJ., concur.

DAVISON, V. C. J., and HODGES and McINERNEY, JJ., concur in result.