Joseph **KARRIMAN**, Jr., Appellant,

v.

**ORTHOPEDIC CLINIC** et al., Appellees.

No. 44834.

Supreme Court of Oklahoma.

Nov. 20, 1973.

Donald C. Lane, Catoosa, Stephen C. Wolfe, Tulsa, for appellant.

Lawrence A. G. Johnson, Farmer, Woolsey, Flippo & Bailey, Inc., Tulsa, for appellees.

BARNES, Justice.

This appeal involves an action by Appellant, hereinafter referred to as "plaintiff", against the Appellees, for damages on various counts in the nature of, or related to, malpractice. The principal individual defendants will hereinafter be referred to by their trial court designations, or as "Dr. Ma" and "Dr. Mc", respectively. The action arose out of surgery performed on plaintiff's back by Dr. Ma and Dr. Mc, who are orthopedic surgeons.

At the suggestion of a friend, plaintiff, who lived on an acreage in Rogers County, went to the defendant Clinic in Tulsa on November 9, 1966. There he was referred to Dr. Ma, who had come to Tulsa and initially entered private practice at said Clinic only sixteen months previously. After plaintiff complained to Dr. Ma of aching pain in his lower back and had related a history of at least one year of back trouble, and Dr. Ma had physically examined him, including X-raying his back, Dr. Ma told plaintiff a disc irregularity was indicated. Upon Dr. Ma's recommendation, plaintiff was hospitalized the same day and placed in traction. When plaintiff's condition showed no improvement from this so-called "conservative" treatment for two days, Dr. Ma performed a myelogram on him that Friday. On the basis of plaintiff's medical history, the physical examination, and the myelogram, Dr. Ma diagnosed the cause of plaintiff's trouble as a massive central disc protrusion [or herniated disc] at the L–3 and L–4 vertebral level of his spine.

The following Monday, November 14th, Dr. Ma performed a laminectomy on plaintiff for the removal of this disc protrusion. On November 16th, Dr. Ma observed weakness in plaintiff's dorsi and plantar flexion, and consulted with Dr. Mc and then called Dr. T, a neurosurgeon, for consultation. The three doctors agreed that further, exploratory, surgery on plaintiff's back was indicated. On the afternoon of the same day, Dr. T, assisted by Dr. Ma, performed surgery by an incision into the dura, which is the outer sheath of the spinal cord. Through this opening in the dura, it was found that above the site of the first operation, instead of the filaments of the cauda equina being separate and free floating in the cerebrospinal fluid within the dura, they were adhered or clumped together, and there was focal swelling in the cauda equina from the L–5 level of plaintiff's spine to its L–2 level, and that, at the latter level, there was a blocking of the flow of the cerebrospinal fluid, and the fluid at the lower level was yellowish in color. The medical term the doctors used in diagnosing this condition was "arachnoiditis circumscripta serosa", hereinafter referred to merely as "ACS".

After the above described operations and treatment, plaintiff was left with a certain amount of paralysis, including numbness and abnormality in his genital area and a condition called "dropped feet". Because of the condition in his lower extremities, he was fitted with leg and back braces, which, together with crutches, enabled him to ambulate.

In the present action he filed in October, 1967, plaintiff sought recovery from the defendants, and their Clinic, of damages for his pain and suffering and permanent disability, loss of earning capacity, medical expenses, etc., which he alleged were the result of their handling of his case. In his amended petition, he alleged that defendants' wrongful acts, in the respects material to this appeal, consisted, in brief substance, of the following:

1. They breached the express warranty and guarantee they made, namely, that Joseph Karriman would not be, and could not possibly be, worse off after surgery;

2. That defendants were guilty of deceit in that they made misrepresentations of, and failed to reveal, facts it was their duty to disclose, in order to obtain plaintiff's consent to the surgery;

3. Defendants negligently, carelessly, and unnecessarily injured plaintiff's spinal cord in a manner, unknown to plaintiff, but known to defendants, with a result which ordinarily does not occur from such surgery, when it is performed with proper skill and in a non-negligent manner;

4. Defendants permitted a surgeon of inexperience and incompetence, unknown to plaintiff, to proceed with dangerous surgery, realizing the hazards thereof, and which surgery plaintiff would not have consented to, had he been informed of the facts;

5. Defendants failed to have a neurosurgeon present during the laminectomy; and they failed in their duty to render post operative care and attention in that they did not keep a close and careful watch for signs of neurological deficits which were discoverable shortly after said operation, and, upon finding same, to relieve them before more progressive spinal cord damage resulted.

Defendants filed an answer denying plaintiff's allegations and specifically alleging that his treatment was conducted in a reasonable, careful and prudent manner and in accordance with prevailing medical standards. They prayed that plaintiff be denied recovery.

At the trial, plaintiff elicited no expert medical testimony in chief other than that of the two defendant doctors, who also testified in their own behalf. At the close of the trial, a verdict was returned for defendants, and judgment was entered accordingly. After the overruling of his mo-

tion for a new trial, plaintiff lodged the present appeal.

Most of the five propositions plaintiff urges for reversal deal with errors the trial court allegedly committed in his instructions to the jury. That court's Instruction No. 6 was as follows:

"You are instructed that physicians or surgeons are required to possess and exercise reasonable skill, diligence, and care in treating patients. He must possess and exercise, in diagnosis and treatment, a reasonable degree of learning, skill, diligence and caution which is ordinarily used and possessed by others in his profession.

"It is his duty to possess and use the care ordinarily exercised in like cases by reputable members of his profession, practicing in and under similar circumstances.

"An orthopedic specialist is required to exercise reasonable skill and care in treating a patient, which is that skill and care ordinarily used by careful and skillful orthopedic specialists."

By the second paragraph of his Instruction No. 10, the court further instructed the jury as follows:

"* * * you are instructed that a physician is not responsible in damages for mere want of success in attempting to treat or cure a patient, unless it is shown that the act or omission of the physician resulted from want of ordinary skill and learning, such as is ordinarily possessed by others in his profession practicing the same type of medicine; * * *"

█ The court refused to give plaintiff's Requested Instruction No. 15, which reads as follows:

"A physician in diagnosing or treating his patient must inform himself of all available medical facts and circumstances pertaining to his patient which are material and relevant to what the physician is employed to diagnose or treat."

To support his contention that the trial court erred in refusing to give the above quotd requested instruction, plaintiff's theory seems to be that the sole cause of plaintiff's disabilities is a swelling that occurred in plaintiff's spinal cord between the time the laminectomy was performed on him November 14th and the exploratory operation that was performed November 16th, for his brief says: ". . . the second surgery was not performed until approximately forty-eight (48) hours after the swelling of the cord and thus the delay in decompression was the proximate cause of plaintiff's injuries." The evidence does not show that Doctors Ma and Mc were negligent in failing to discover plaintiff's ACS before performing the laminectomy, or at any other time prior to the exploratory operation on Wednesday, November 16th. In this connection, the unmistakable tenor of all of the medical experts who testified on the subject was that the defendant doctors were not negligent in failing to anticipate plaintiff's ACS until it was discovered during the November 16th operation. Dr. T was very emphatic in his testimony that there was "no way" this condition could have been anticipated until the dura was incised and explored as it was in that second operation. While there may have been, and probably were, medical facts and circumstances that would have been relevant and material to plaintiff's condition, that the defendant doctors did not discover before that second operation, on the basis of the substantial evidence that they were not negligent in failing to discover the preexisting ACS inside plaintiff's spine's dura, we cannot say that the trial court erred in refusing to give plaintiff's Requested Instruction No. 15. Because of the weight of the evidence showing that no negligence on the part of these doctors was the proximate cause of any unintentional tort for which plaintiff claimed damages, we are also of the opinion that the trial court's failure to give plaintiff's Requested Instruction No. 16, if error, was a harmless one.

█ Nor do we find reversible error in the trial court's giving of its Instruction

No. 5 and his failure to give plaintiff's Requested Instructions Nos. 11 and 17. The court's Instruction No. 5 gave the jury the ordinary definition of "negligence", generally, as the "lack of such attention, care, skill, or diligence . . ." possessed by a "prudent man." Plaintiff's Requested Instructions defined it in terms of the skill and care of an "orthopedic specialist." We think, however, that, under the rule of appellate review applicable here, since the trial court's above quoted Instructions Nos. 6 and 10 seem to make it reasonably clear that the defendant doctors' negligence, or lack of it, was to be determined by the skill and care of an "orthopedic specialist", the giving of the court's Instruction No. 5 and the failure to give plaintiff's Requested Instructions Nos. 11, 17 and 19 cannot be considered cause for reversal under the circumstances. In this connection, see Wooten v. Hall, Okl., 442 P.2d 334, and other cases appearing in 14 Okl.Dig., "Trial", ▇▇▇▇ Instructions must be considered in their entirety "and not in isolated portions." Chambers v. Nottebaum, Fla.App., 96 So.2d 716.

Some of the arguments under Proposition III in plaintiff's brief pertain to what Dr. Ma told, and failed to tell, plaintiff and his wife, before the laminectomy, whether the written consent plaintiff gave to the surgeon involved was an "informed consent", and whether or not the jury should have been instructed on the theory that the result of this operation had been warranted, so that the jury should have been instructed on the theory of warranty, fraud, deceit, and/or fraudulent misrepresentation. On the basis of some of the statements plaintiff's evidence indicated Dr. Ma made before this operation, plaintiff's brief says he "pled and proved" these theories for recovery; and he contends that the trial court should have given the jury his Requested Instructions Nos. 6, 7, 43, 44, 45 and 46.

▇▇ As a part of their refutation of these arguments, defendants refer to a printed form plaintiff signed before each operation. These were titled "CONSENT TO OPERATION" in large, bold print, and, after plaintiff's name, age, and the date, read, in material part, as follows:

"I hereby authorize Dr. [name of doctor or doctors performing the operation] and whomever he may designate as his assistants, to perform upon myself
[State name of patient or 'myself'] [To be filled in by patient] the following operation [Here the November 13th Consent stated, among other things: 'Laminectomy & disc removal, . . .'; Here the November 16th Consent stated: 'Reexploration of lumbar region and possible Laminectomy';] and if any unforeseen condition arises in the course of the operation calling in his judgment for procedures in addition to or different from those now contemplated, I further request and authorize him to do whatever he deems advisable.

"The nature and purpose of the operation, possible alternative methods of treatment, the risks involved, and *the possibility of complications have been fully explained to me. I acknowledge tha tno guarantee or assurance has been made as to the results that may be obtained.*

"I consent to the disposal of tissues, to photographs of operative parts, and admission of necessary personnel into the operating room, or persons deemed necessary by attending surgeon. I certify that I have read fully and understand above consent to operation; that the explanations therein referred to were made, and that all blanks or statements requiring insertion or completion were filled in and inapplicable paragraphs, if any, were stricken before I signed.

    \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Witness [s] Amelia Stark            Signed Joseph Karriman, Jr."
[Emphasis added.]

Plaintiff testified that he did not read the consent forms before signing them, but defendants cite Eli Walker Dry Goods Co. v. Smith, 69 Okl. 261, 160 P. 898 [quoting Guthrie & Western R. Co. v. Rhodes, 19 Okl. 21, 91 P. 1119, 21 L.R.A., N.S. 490], as precluding his right, in the face of that writing, to have had the case submitted to the jury on the theory that Dr. Ma's oral statements to him and his wife before the laminectomy constituted a warranty of the result of said operation. While plaintiff and his wife testified to statements by Dr. Ma to them, that might be interpreted as having painted an optimistic picture of the possibility of the disc protrusion's removal alleviating plaintiff's problems, or at least not worsening them, and we question the admissibility of such parol evidence to contradict the statements in the above quoted writings, in the absence of proof of plaintiff's incapacity to knowledgeably read and sign them [see Grannum v. Berard, 70 Wash.2d 304, 422 P.2d 812, 25 A.L.R.3d 1434], we have carefully considered the testimony and find nothing in the statements made by Dr. Ma that constitutes fraud as our statute defines it. See 15 O. S.1971, § 58. On the other hand, the evidence shows that he made a special effort to acquaint plaintiff and his wife with what was involved. While we recognize that consent to an operation is not valid if obtained by representations which are false *to the knowledge of the surgeon making them* [Birnbaum v. Siegler, 273 App.Div. 817, 76 N.Y.S.2d 173], there is insufficient evidence in this case to show that Dr. Ma knew, or should have known, of the "napkin ring" constriction of plaintiff's spine's dura and the ACS condition which existed in his spine previous to the laminectomy and subsequent exploratory operation. In view of his ignorance of these conditions, which was excused by expert medical testimony, Dr. Ma had no reason to believe, as far as the evidence shows, that his laminectomy to remove the disc protrusion would not be as successful in obtaining the desired results as other such operations performed in the absence of such preexisting conditions. In this connection, notice

Getchell v. Mansfield, 260 Or. 174, 489 P. 2d 953, 956. The evidence is insufficient to show that Dr. Ma's representations to plaintiff and his wife before the laminectomy contained any "positive assertion in a manner not warranted by the information . . . ." he had, within the meaning of Section 58(2), supra. In a recent laminectomy case, Ray v. Scheibert, Tenn.App. 484 S.W.2d 63, 72, it was said:

"In our opinion an honest mistake made by a physician in diagnosing the cause of a patient's infirmity, standing alone, is not evidence of fraudulent concealment.

"Our Tennessee cases hold that knowledge on the part of the physician of the fact of a wrong done is an essential element of fraudulent concealment. Clinard v. Pennington (1969), 59 Tenn.App. 128, 438 S.W.2d 748.

"In the Pennington case this Court said:

" 'The essence of fraudulent concealment is knowledge in the possession of the person committing the fraud. * * * *' "

In view of the foregoing, we are of the opinion that the trial court committed no error in refusing to give plaintiff's Requested Instructions Nos. 6, 7, 43 and 45.

▮ Nor do we find the evidence sufficient to show that the defendant entered into a special undertaking, or contract, with plaintiff that the surgery would have a certain result. Proof of such a contract was essential to plaintiff's right to recover on the theory of warranty, and to overcome the presumption, aided here by the recitals of plaintiff's written consent to the surgery, that all the defendants promised plaintiff was the learning, skill, and experience ordinarily possessed by others of their profession. As said in the early case of Kernodle v. Elder, 23 Okl. 743, 746, 747, 102 P. 138, 139:

"The rule as adopted by the Supreme Court of Oklahoma Territory is announced in the case of Champion v. Kieth, 17 Okl. 204, 87 Pac. 845, wherein, on the authority of numerous cases cited,

Mr. Justice Pancoast, in a well-considered opinion, says of the practicing physician: 'He is never considered as warranting a cure, unless under a special contract for that purpose. His contract, as implied by law, is that he possesses that reasonable degree of learning, skill, and experience which is ordinarily possessed by others of his profession; that he will use reasonable and ordinary care and diligence in the treatment of the case which he undertakes; and that he will use his best judgment in all cases of doubt as to the proper course of treatment. He is not responsible for damages for want of success, unless it is shown to be the result of want of ordinary skill and learning, such as ordinarily possessed by others of his profession, or for want of ordinary care and attention. He is not presumed to engage for extraordinary skill or for extraordinary diligence or care, nor can he be made responsible in damages for errors in judgment, or mere mistake in matters of reasonable doubt or uncertainty.' "

The above is in accord with the present general rule. See the annotations at 27 A.L.R. 1250 and 43 A.L.R.3d 1221, 1230. We have thoroughly examined the evidence in this case and find it insufficient to show that there was ever a special contract of warranty entered into between plaintiff and either or both of the defendant doctors or their Clinic. It is therefore our opinion that the trial court did not err in refusing to give plaintiff's Requested Instructions Nos. 44 and 46.

■ Plaintiff's Requested Instruction No. 8 would have allowed the jury to apply the doctrine of res ipsa loquitur to the case. His argument that the court erred in refusing this instruction is based on the premise that his disabilities were caused by injuries to his spine from the defendant doctors' surgery. Since we have found the jury's verdict for defendants abundantly supported by medical evidence that plaintiff's disabilities were the result of his spine's preexisting "napkin ring" constriction and ACS condition, rather than being caused by any injury done its dura during the subject surgery, this argument shows no error constituting cause for reversal. Notice Holland v. Stacy, Okl., 496 P.2d 1180, 1183, and 12 O.S.1971, § 78.

■ Under plaintiff's Propositions IV and V, he complains that the trial court allowed defendants to invade the province of the jury and to violate the best evidence rule with part of the evidence they introduced, and also complains of certain "irregularities" he says occurred during the testimony of the two defendant doctors and the cross-examination of plaintiff. Without unnecessarily lengthening this opinion by describing plaintiff's argument in detail, suffice it to say that we have carefully considered its application to the portions of the record referred to therein, and have concluded that none of it pertains to errors we consider inherently prejudicial. After taking cognizance of that type of error in Teague v. United Truck Service, Okl., 499 P.2d 380, 383, 384, we there applied to alleged errors, not inherently prejudicial, the test of prejudice applied in previous cases namely: The likelihood that the verdict would have been different had they not occurred [Missouri-Kansas-Texas Railroad Company v. Jones, Okl., 354 P.2d 415 (syll. 4)] as measured by the usual criterion of the verdict's support in the evidence. [As to this and related matters, see Sisler v. Jackson, Okl., 460 P.2d 903 (syll. 5), Hutton v. Lowry, Okl., 444 P.2d 812, and Oklahoma Transportation Co. v. Phillips, Okl., 265 P.2d 467 (syll. 2).] Applying this test to the present case, after a thorough consideration of plaintiff's arguments and the cases he cites, we have determined that, since the verdict is in accord with the overwhelming weight of the evidence, it would not have been different had the subject errors not occurred. Therefore, we can only conclude that the claimed errors were harmless under the circumstances and consequently are not cause for reversal.

For the foregoing reasons, the judgment, based on the verdict for the defendants, is hereby affirmed.

All Justices concur.