IN THE MATTER OF K.H.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF K.H.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF K.H.
2020 OK 32
Case Number: 118035; Comp. w/118078
Decided: 05/12/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 32, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



IN THE MATTER OF K.H., C.H., E.H., C.H. DEPRIVED CHILD(REN)
TAYLOR HUDSON, Appellant,
v.
STATE OF OKLAHOMA, Appellee.
CODY HUDSON, Appellant,
v.
STATE OF OKLAHOMA, Appellee.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
JUVENILE DIVISION
Honorable Cassandra M. Williams, Trial Judge

¶0 The appellants, Taylor and Cody Hudson (Hudson/parents), were arrested and charged with felony criminal child abuse in relation to the alleged abuse of one of Cody Hudson's sons. Subsequently, the State sought to terminate the Hudsons' parental rights to the four children they had together. At trial, the parents sought to preclude any evidence of the criminal charges from being presented to the jury. The trial court limited evidence of the criminal charges to only inform the jury that charges had been filed ---- nothing else. The jury rendered a verdict terminating parental rights as to both parents. The Hudsons appealed. We retained the cause. We hold that the limited admission of evidence of the fact that parents have been charged with criminal felonies for child abuse (but not yet convicted) was error but does not warrant reversal. The jury's verdict was supported by the clear and convincing evidence that the abuse was heinous and shocking.

AFFIRMED.

Phillip P. Owens, II., Oklahoma City, Oklahoma, for Appellant Taylor Hudson.
Stephanie A. Younge, Oklahoma City, Oklahoma, for Appellant Cody Hudson.
Jaclyn Rivera, Assistant District Attorney, Oklahoma County, Oklahoma City, Oklahoma, for Respondent, State of Oklahoma.


KAUGER, J:
¶1 We retained this cause to address whether the admission of evidence of the fact that the parents have been charged with criminal felonies for child abuse (but not yet convicted) was error which does not warrant reversal. We hold that it does not because the jury's verdict was supported by clear and convincing evidence of heinous and shocking abuse.[1]
 
FACTS
¶2 The appellant, Cody Hudson (father/Hudson) lived in Tulsa, Oklahoma, and fathered two boys, R.H. and B.H., with Revona Serber (natural mother/Serber). The boys were born on April 14, 2009, and February 3, 2012, respectively. After Hudson and Serber's relationship ended, no formal custody agreement was made, but the father did see his boys occasionally. Hudson then fathered two more boys and a girl, C.H., E.H., and C.H., on January 28, 2015, December 5, 2015, and November 11, 2017, respectively, with the appellant, Taylor Ainsworth, now Hudson, (hereinafter referred to as "mother," even though she is the step-mother of R.H. and B.H.).
¶3 In October of 2015, the couple moved from Tulsa, Oklahoma, to Oklahoma City, Oklahoma, and the father stayed home with the children while the mother worked to support the family. In February of 2018, the father and mother took physical custody of R.H. and B.H. because of Serber's drug use. The couple had previously had the boys in December of 2017 for about two weeks as well.
¶4 Serber apparently lived in an apartment with broken windows, occasionally without electricity, with little food, and with drug users and strangers coming into the apartment with weapons, engaging in sex, and using drugs. B.H. moved to live with another relative in July of 2018, due to severe behavioral problems which the couple thought made it unsafe for him to be around their children. According to the mother, B.H., who was six at the time, would hit and cuss at other kids, and bang his head on the ground. He had also asked for knives to cut his own eyes out, attempted to hang himself with a belt, and threatened to kill other people. R.H. also had behavior issues, but not nearly as severe as B.H.
¶5 After a receiving a tip from an unnamed source, on August 27, 2018, police officers and the Oklahoma Department of Human Services (DHS) jointly dispatched to the Hudson's home to do a child welfare check for R.H. Police officers searched the home, but were unable to find R.H. The Hudsons told the police that R.H. was with a grandmother. The police left and contacted the grandmother, and she told them that she did not have R.H., and that they were lying. The police returned and this time they found R.H. hiding in the washing machine. R.H. had significant bruising, in different stages of healing, to his upper torso, neck, and face. DHS took R.H. to OU Children's Hospital for examination, and the police took the father to jail. A few days later, the mother was also arrested.
¶6 When R.H. was taken to the hospital, he reported to the DHS worker that he got in trouble for not listening, that the mother grabbed his face and was on top of him, and R.H. hit his head on the floor. However, he was generally reluctant to talk to DHS about what happened in the house. A trained forensic interviewer also interviewed R.H. at the hospital in a recorded interview as well.
¶7 The mother offered an explanation to the DHS worker that just days prior to the incident, she was concerned with R.H.'s behavior toward her children. R.H. had informed them that he had been playing with another kid at his natural mother's apartment in Tulsa when the other kid pulled his pants down and told R.H. to "suck it" or he would hit him in the head. She reported that after her son C.H. tried to insert a bathtub crayon in his anus, R.H. admitted that he had touched C.H. through his pants on the penis. She also said that she saw R.H. playing with himself as her daughter, E.H., watched. She also thought she caught R.H. moving his hand away from E.H.'s undone diaper. It was at this point the father got angry and spanked R.H. all over his body. They hid R.H. in the washer when the police came because they were scared they would get their kids taken away.
¶8 The Oklahoma County District Attorney (DA) filed applications on August 28, 2018, to take the father and mother's three children, C.H, E.H. and C.H., as well as R.H., into emergency custody and place in kinship foster care. Emergency care is allowed when there is an imminent safety threat to the children.[2] The trial court granted the DA's request the same day and set a hearing for August 30, 2018. As a result of the August 30th hearing: the trial court granted the father and mother visitation; R.H. went to live with his maternal grandmother; the other three were in a foster home; and the Court set another hearing for September 17, 2018.
¶9 On September 6, 2018, the father and mother married. The next day, on September 7, 2018, apparently as a result of the forensic interview and medical examination of R.H., the DA filed petitions to have C.H., E.H., and C.H., determined to be deprived and to terminate the mother's and father's parental rights due to the shocking and heinous abuse to the half-sibling, R.H. Termination is allowed for many reasons, one of which is when abuse or neglect of a child or a sibling is heinous and shocking.[3] The DA alleged both the father and mother failed to provide proper care of their children and that they beat, slapped, hit, and caused R.H. to be covered in bruises. The DA also asserted that the mother tried to choke R.H., tied him up, hit him with a belt, poked him in the eye, stepped on him, and that she psychologically abused him and left him at home alone when the rest of the family went out.
¶10 The DA alleged that the father was unfit because he also hit R.H., and caused him to have a black eye. The children remained in DHS custody while the causes were pending. The DA also filed criminal felony charges on September 11, 2018, against the father and mother. The criminal case has not yet been resolved.
¶11 On December 6, 2018, the mother gave birth to another child, K.H., and the next day DHS also sought emergency custody of K.H. as well. On December 11, 2018, the trial court allowed K.H. to be placed with her siblings in DHS custody. The father's and mother's termination proceedings as to all four of their children proceeded to trial on May 7-10, 2019.[4]
¶12 The trial consisted of testimony and other evidence presented by the father, the mother, a police officer, R.H, and the video forensic interview of R.H. made at the hospital. Testimony of B.H., Serber's sister, two child protective services workers, a DHS permanency worker, and a grandmother, was also presented to the jury. By the conclusion of the trial, the trial court had already determined that the children were deprived. The jury returned verdicts to terminate the parental rights of both the father and the mother.
¶13 On June 7, 2019, and June 25, 2019, the mother and the father, respectively, appealed. On July 3, 2019, the Court made the mother's appeal and the father's appeal companion cases with separate records and separate briefing by the parties. We retained the cause on October 14, 2019, and it was assigned on December 9, 2019, for an opinion to address the admission of evidence of the pending criminal charges in a termination of parental rights proceeding. Because both causes involve the same trial and are companion cases, we decide them both in this single opinion.
I.
EVIDENCE OF CRIMINAL CHARGES.
¶14 Both the father and mother argue that the trial court erred in allowing the State and the children to admit evidence of their criminal charges before the jury. Both filed motions in limine to exclude such evidence[5] and continued to object to the evidence throughout the trial, after the court denied the motions in limine. While the father and mother admit that criminal convictions may be used generally to impeach witnesses, they point out that neither of them has been convicted.[6] Consequently, they argue that the evidence of only being charged with a crime would be irrelevant, and too prejudicial.[7] The State and children argue that it was not error to admit the evidence of criminal charges.
¶15 Title 12 O.S. 2011 §2609[8] addresses the admissibility of a criminal conviction as evidence, but it does not address evidence of criminal charges being filed, which have not yet resulted in conviction. It provides that such evidence of conviction shall be used unless its prejudice outweighs its probative value. Even if the evidence were irrelevant or otherwise inadmissable, the injection of irrelevant or otherwise inadmissable evidence is ordinarily not grounds to reverse a jury verdict unless that error was prejudicial.[9] The test of prejudice is the likelihood the verdict would have been different had the error not occurred, measured by the usual criterion of the verdict's support in evidence.[10]
¶16 Evidence of prejudice is not clear. The trial court expressly prohibited questions about where the criminal case stood at the time of trial or questions which alluded to a particular result. The court only allowed the suggestion that criminal charges were still pending. No more than that. The rationale behind the trial court's ruling was explained as follows in the trial court's ruling on the motions in limine are found at Volume 1, pages 9-10, of the May 7, 2019, transcript. It provides in pertinent part:
. . . I am not able to find any law that directs [t]his Court with respect to whether this is inadmissible evidence or, more importantly, whether or not it is unfairly prejudicial. You know, by the nature of these events that occurred, that leads us to where we are today. It is -- I mean, the facts are what the facts are.
In this case, what I recognize is this: I recognize that as it relates to Mr. Cody Wayne Hudson, that he has entered a no contest stipulation to the allegations in the petition.
This Court made a judicial finding that there was sufficient evidence to find that the children are deprived as to the father on the grounds of lack of parental care and guardianship, heinous and shocking physical abuse, threat of harm, as well as failure to protect. That's been a determination that's been made by [t]he Court.
I say that because, within the descriptors for heinous and shocking physical abuse, it clearly indicates that one of the bases or descriptions for this abuse includes the fact that the father was charged in Oklahoma County case number CF-2018-4283 with child abuse.
You know, as I have looked at this and tried my best to make sure that this jury does not walk away with an impression one way or the other, this is a neutral piece of evidence. The fact that the parents were both charged is a fact. The fact that law enforcement was involved in this case is a fact.
It is one that leads a jury to conclude that the abuse is heinous and shocking? Well, I don't think that that's the case. Because I think that the jury's instructions, as I look through them, Instruction No. 3.11 that defines heinous and shocking abuse, doesn't list anywhere that there's been a criminal charge. It does give the jury specific direction on what to look at in terms of the level of abuse to determine whether or not it fits within the area of physical abuse versus that higher level of heinous and shocking abuse.
So, to the extent that both parents have asked [t]his Court to limit The State of Oklahoma from offering evidence and testimony about the rest, and that [sic] are charging both parents in this case, I'm going to deny that request.
To ask the parents questions about where their case stands at this point in time or to allude to a particular result; I am prohibiting both sides from being able to do that.
At this point in time, what I'm allowing you all to suggest as this point in time, to the jury, which is true, which in this case, the criminal charges, are still pending against both parents. No more than that. . .
Leaving out all references to the police altogether, and what occurred leading up to arrest, would have required the trial court to leave out nearly all of the events which led to the allegations in this cause. The fact that the parents were charged and not yet convicted could likely influence the jury less than if they had already been convicted and were in prison.
¶17 The terminations sought by the State were based on its allegations that the father's and mother's abuse of R.H. was heinous and shocking.[11] We cannot say that the verdict would have been different had the arrests been excluded from the jury. Jury instruction #8, which is the statement of the case mentions that the mother and father were charged with child abuse in Oklahoma County CF-2018-4283.
¶18 Jury instructions #12[12] and #14,[13] defining heinous and shocking does not list a criminal charge as a requirement for a finding of heinous and shocking. Nor does #13, which defines abuse.[14] The only mention of the criminal charges during the course of the trial was limited to the fact that an arrest occurred and the parents had been charged -- nothing more.[15] No evidence was presented that alluded to the potential outcome of the criminal charges. Yet, there was overwhelming evidence about repetitive abuse to both R.H. and B.H., which we will discuss further herein.
¶19 Title 20 O.S. 2011 §3001.1 provides:
No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.
Neither parent argues a substantial violation of a constitutional right. The error which occurred, under the circumstances, it is clearly not a cause for reversal of the jury's express findings of heinous and shocking sufficient to terminate parental rights.
II. 
CLEAR AND CONVINCING EVIDENCE WARRANTS TERMINATION.
¶20 The father and step-mother argue that the State failed to meet its burden of proof required to allow immediate termination of their parental rights. The State and children argue that there was clear and convincing evidence presented to support the jury's verdict which terminated their rights based on heinous and shocking abuse, and that termination was in the children's best interest.
¶21 The right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the federal and state constitutions.[16] The magnitude of such a right requires, in parental termination cases, that the State must show by clear and convincing evidence that the child's best interest is served by the termination of parental rights.[17] Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established.[18] This standard of proof balances the parents' fundamental freedom from family disruption, with the state's duty to protect children within its borders.[19]
 
¶22 Likewise, our review on appeal must find the presence of clear and convincing evidence to support the trial court's decision.[20] We must canvass the record to determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven.[21] Our appellate review does not require a re-weighing of the evidence presented at trial.[22]
 
¶23 The jury heard extensive testimony and received considerable other evidence that would have allowed them to make an informed determination on whether conduct of the parents was heinous, and shocking, and whether termination was in the children's best interest. The evidence was too considerable to repeat all of it. However, we note that the parents' version of events and care of the children differed from the children's version.
¶24 The State presented evidence that the bruises were indicative of physical abuse, choking, and strangling. The boys' aunt testified that she was concerned with the boys' (R.H and B.H.) welfare, that they had lost weight, and looked sickly, and had black under their eyes from lack of sleep. She also had difficulty talking to and seeing the boys.
¶25 R.H. reported that he was made to sleep on the floor without a blanket or pillow, that he was restricted from food and water, that he was often fed oatmeal, and if he threw it up he had to eat it anyway. He was home schooled and told by the mother that his dad didn't want him or care about him. R.H.'s recorded interview was compelling and it provided insight into his injuries as well as to his hesitation to discuss everything that went on in the home. He feared his dad would go to jail. B.H. also reported similar stories and said that he would get hit everywhere, that he was made to put vinegar in his mouth when he was bad. Both boys were concerned for the safety of K.H., C.H., E.H, and C.H.
¶26 The parents had explanations for everything that the boys reported. For instance, according to the mother, on August 24, 2018, R.H. was caught inappropriately touching C.H. and when confronted he threw his laptop and his father grabbed him by the arm and spanked him. She noticed bruises the next day. Two days later, she caught R.H. quickly pulling his hand away from their daughter's undone diaper. Her version is that R.H. lunged at her and his elbow ended up in her mouth, she bit him to get him off of her and the father began hitting R.H.
¶27 The parents claimed that some of R.H.'s injuries came from falling over a chair or from playing with the other children. As far as food goes, the mother said that the boys were overweight. They went from eating only junk food to healthy food and if they refused to eat it, then they were not forced to, they just simply ate at the next meal. The parents insist they never withheld food or water from the boys or restricted their access to the bathroom. The mother was convinced that the boys were just confused between the things they witnessed at their natural mother's house, and what actually occurred in their home.
¶28 While most heinous and shocking cases tend to involve either sexual abuse or death, they also include similar accounts of physical abuse, malnourishment, and physical and psychological injuries.[23] We have no doubt that what R.H. and B.H. may have witnessed while in the care of their natural mother left them somewhat unruly or challenging to raise, but we also have no doubt that the evidence presented at trial was sufficient for the jury to make a determination that met the clear and convincing standard required for termination of parental rights for heinous and shocking abuse, and was in the children's best interest. Accordingly, we must affirm the trial court.
CONCLUSION
¶29 Limited evidence of the filing of criminal charges in this cause, was error but does not warrant reversal. While parents have a fundamental right to raise their children, that right may be terminated by the state's duty to protect children from heinous and shocking harm. After examining the record, we have determined that there was more than sufficient evidence for the fact finder to reasonably form a firm belief that the heinous and shocking grounds for termination were proven. Accordingly, the jury verdict must be affirmed.
AFFIRMED.

DARBY, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, KANE, and ROWE, JJ., concur.
GURICH, C.J. (by separate writing), and COLBERT, J., dissent.

FOOTNOTES

[1] The father argues that the heightened burden of proof of beyond a reasonable doubt under the Indian Child Welfare Act (ICWA) denies him equal protection of the law under the 14th Amendment to the United States Constitution. The children in this cause are not Indian children subject to the ICWA. This argument was not presented in the trial court and no reference appears in the record on appeal. It was raised for the first time on appeal, therefore we will not consider such question on appeal. Jernigan v. Jernigan, 2006 OK 22, ¶26, 138 P.3d 539; Johnson v. City of Woodward, 2001 OK 85, ¶21, 38 P.3d 218; Northwest Datsun v. Oklahoma Motor Vehicle Com'n, 1987 OK 31, ¶16, 736 P.2d 516. There are exceptions to the general rule, such as constitutional questions of great public welfare. Northwest Datsun v. Oklahoma Motor Vehicle Com'n, supra. Nevertheless, the father's argument likely stems from the United States Court of Appeals, 5th Circuit's recent decision in Brackeen v. Bernhardt, 937 F.3d 406 (5th Cir. 2019) wherein the 5th Circuit Court addressed this same issue. On November 7, 2019, the 5th Circuit ordered the cause to be reheard by the court en banc. 942 F.3d 287, and no final decision has been issued. Consequently, we decline to consider the constitutional question raised by the father for the first time in this appeal.

[2] Title 10A O.S. 2011 §1-4-201(a) provides:
A. Pursuant to the provisions of this section, a child may be taken into custody prior to the filing of a petition:
1. By a peace officer or employee of the court, without a court order if the officer or employee has reasonable suspicion that:
a. the child is in need of immediate protection due to an imminent safety threat,
b. the circumstances or surroundings of the child are such that continuation in the child's home or in the care or custody of the parent, legal guardian, or custodian would present an imminent safety threat to the child, or
c. the child, including a child with a disability, is unable to communicate effectively about abuse, neglect or other safety threat or is in a vulnerable position due to the inability to communicate effectively and the child is in need of immediate protection due to an imminent safety threat; or
2. By an order of the district court issued upon the application of the office of the district attorney. The application presented by the district attorney may be supported by a sworn affidavit which may be based upon information and belief. The application shall state facts sufficient to demonstrate to the court that a continuation of the child in the home or with the caretaker of the child is contrary to the child's welfare and there is reasonable suspicion that:
a. the child is in need of immediate protection due to an imminent safety threat,
b. the circumstances or surroundings of the child are such that continuation in the child's home or in the care or custody of the parent, legal guardian, or custodian would present an imminent safety threat to the child, or
c. the child, including a child with a disability, is unable to communicate effectively about abuse, neglect or other safety threat or is in a vulnerable position due to the inability to communicate effectively and the child is in need of immediate protection due to an imminent safety threat.
The application and order may be verbal and upon being advised by the district attorney or the court of the verbal order, law enforcement shall act on such order. If verbal, the district attorney shall submit a written application and proposed order to the district court within one (1) judicial day from the issuance of the verbal order. Upon approval, the application and order shall be filed with the court clerk; or
3. By order of the district court when the child is in need of medical or behavioral health treatment in order to protect the health, safety, or welfare of the child and the parent, legal guardian, or custodian of the child is unwilling or unavailable to consent to such medical or behavioral health treatment or other action, the court shall specifically include in the emergency order authorization for such medical or behavioral health evaluation or treatment as it deems necessary.

[3] Title 10A O.S. 1-4-904(B)(9) provides:
B. The court may terminate the rights of a parent to a child based upon the following legal grounds: . . .
9. A finding that the parent has abused or neglected the child or a sibling of the child or failed to protect the child or a sibling of the child from abuse or neglect that is heinous or shocking;

[4] This cause does not concern the termination of the father's or Serber's rights to R.H. and B.H. Their status is unknown as far as this cause is concerned.

[5] Title 12 O.S. 2011 §2104 provides:
A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and:
1. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
2. If the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.
B. The court may add any statement which shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon. It may direct the making of an offer in question and answer form.
C. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being presented to the jury by any means, including making statements or offers of proof or asking questions within the hearing of the jury.
D. Nothing in this section precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

[6] Title 12 O.S. 2011 §2609 provides in pertinent part:
A. For the purpose of attacking the credibility of a witness:
1. Evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Section 2403 of this title, if the crime was punishable by death or imprisonment in excess of one (1) year pursuant to the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and . . .

[7] Title 12 O.S. 2011 §2403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise. However, in a prosecution for any criminal homicide, an appropriate photograph of the victim while alive shall be admissible evidence when offered by the district attorney to show the general appearance and condition of the victim while alive.

[8] Title 12 O.S. 2011 §2609, see note 6, supra.

[9] See, Karriman v. Orthopetic Clinic, 1973 OK 141, ¶21, 516 P.2d 141; Teague v. United Truck Service, 1972 OK 97, ¶14, 499 P.2d 380; Title 12 O.S. 2011 §78 provides:
The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.

[10] Karriman v. Orthopetic Clinic, see note 9, supra.

[11] See note 12, infra regarding the definition of heinous and shocking.

[12] Jury instruction #12, taken from 10A O.S. Sup., 2010 §1-4-904(B)(4) provides:
The State seeks to terminate the parent's rights on the basis of the parent's abuse of the child or a sibling of the child that is heinous and shocking. In order to terminate parental rights on the basis of the parent's abuse of the child or a sibling or the child that is heinous and shocking, the State must probe by clear and convincing evidence that:
1. The child has been adjudicated deprived;
2. The parent abused the child or a sibling of the child;
3. The abuse was heinous and shocking; and,
4. Termination of parental rights is in the best interests of the child.

[13] Jury instruction #14, taken directly from 10A O.S. Supp. 2010 §1-105(31) provides:
"Heinous and shocking abuse" includes, but is not limited to, aggravated physical abuse that results in serious bodily, mental, or emotional injury. "Serious bodily injury" means injury that involves:
a. a substantial risk of death,
b. extreme physical pain,
c. protracted disfigurement,
d. a loss or impairment of the function of a body member, organ, or mental faculty,
e. an injury to an internal or external organ or the body,
f. a bone fracture,
g. sexual abuse or sexual exploitation,
h. chronic abuse including, but not limited to, physical, emotional, or sexual abuse, or sexual exploitation which is repeated or continuing,
i. torture that includes, but is not limited to, inflicting, participating in or assisting in inflicting intense physical or emotional pain upon a child repeatedly over a period of time for the purpose of coercing or terrorizing a child or for the purpose of satisfying the craven, cruel, or prurient desires of the perpetrator or another person, or
j. any other similar aggravated circumstance.

[14] Jury Instruction #13, taken from 10A O.S. Supp. §1-1-105(2) provides:
"Abuse" means harm or threatened harm to the health, safety, or welfare, including but not limited to nonaccidental physical or mental injury. Abuse does not include a parent's use of ordinary force as a means of discipline including, but not limited to spanking, switching, or paddling.
"Harm or threatened harm to the health or safety of a child" means any real or threatened physical, mental, or emotional injury or damage to the body or mind that is not accidental including but not limited to sexual abuse, sexual exploitation, neglect, or dependency.

[15] The discussion of the criminal charges a/k/a the argument over the motion in limine occurred outside of the presence of the jury. The transcript of May 7, 2019, Volume 1 line 1 provides that:
"We are outside the presence of the jury in the matter of the Hudson children, case number JD-2018-253. Before the jury is actually sworn after being impaneled, and at the beginning of the evidence in this case, The Court is taking up the issue of the mother's motion in limine filed in this case.
Specifically, the mother is requesting that The Court find to inadmissable the -any references to either the fact that the mother or the father were arrested and charged for events related to the reasons why we find ourselves in court on this particular motion.
Both parties then went on to present their evidence and the Court made its ruling.
The following were the only times the arrests were mentioned:
1. Opening statements state that Police went to the home to do a welfare check and Mr. Hudson was arrested because he admitted that he had caused the injuries. After the child talks to them about ongoing abuse, Mrs. Hudson was also arrested and the children were placed in DHS custody. No mention of criminal charges is made whatsoever.
2. During the mother's testimony when she describes how the husband beat the kid up and stuffed him in the washing machine, she states that she was criminally charged with child abuse because of what happened and she spent a week in jail. Vol. II, page 24-26. She is also asked and states that "Ok, but this is not resolved? You're not convicted or found guilty? to which she answers "I am not."
3. During the father's description of the events. Vol II, pages 46-47 he states that he was arrested, he spent five days in jail, and that he was criminally charged but the criminal case is not resolved.
4. The police officer does not mention any charges. He does on page 204 of Volume II state that both parents were detained and the father was taken into custody and transported to the police station.
5. Jury instruction number 8 mentions only that criminal charges were filed. The defense objected to the instruction but did not offer any type of counter instruction. The transcripts recount it as the trial judge read it. It states that the Mother and Father are charged in Oklahoma County with child abuse. At the end of the instruction it notes that "These allegations are not evidence in this case."

[16] In the Matter of the Adoption of L.D.S., 2006 OK 80, ¶11, 155 P.3d 1, In re Adoption of D.T.H., 1980 OK 119, ¶18, 615 P.2d 287 (overruled on other grounds).

[17] In the Matter of C.D.P.F., 2010 OK 81, ¶5, 243 P.3d 21; In the Matter of C.G., 1981 OK 131, ¶17, 637 P.2d 66.

[18] In the Matter of the Adoption of L.D.S., see note 16, supra; In the Matter of C.D.P.F.see note 18, supra; In the Matter of C.G.see note 18, supra at ¶17 n. 12.

[19] In the Matter of the Adoption of L.D.S., see note 16, supra; In the Matter of C.D.P.F.see note 18, supra; In the Matter of C.G.see note 18, supra at ¶17 n. 12.

[20] In the Matter of the Adoption of L.D.S., see note 16, supra; In the Matter of C.D.P.F.see note 18, supra; In the Matter of S.B.C., 2002 OK 83, ¶7, 64 P.3d 1080.

[21] In the Matter of C.D.P.F.see note 18, supra; In the Matter of S.B.C. see note 21, supra.

[22] In the Matter of C.D.P.F.see note 18, supra.

[23] For example, see In the Matter of S.T.G., 1981 OK 11, 806 P.2d 636; In the Matter of T.R.W., 1985 OK 99, 722 P.2d 1197; In the Matter of D.P.D., 2006 OK CIV APP 110, 144 P.3d 202; In the Matter of T.H., M.B., and J.M.B., 2005 OK CIV APP 5, 105 P.3d 354.




GURICH, C. J., dissenting:
¶1 The majority acknowledges that admission of evidence relating to criminal charges filed against the parents was error, yet allows the jury verdict to stand because "[e]vidence of prejudice is not clear." I agree with the majority that the admission of criminal charges was error. I dissent, however, because the error was highly prejudicial, and the possibility of prejudice should be weighed in favor of the parents in this termination proceeding. The only reasons for offering evidence of the criminal charges was to "validate" the State's termination case and arouse negative emotions in the jury. The charges were irrelevant and did not support any claim or defense in the proceeding. The majority holding is inconsistent with the Evidence Code, the Oklahoma Constitution, and the intrinsic protections underpinning cases involving the severance of parental rights.
¶2 The majority, by allowing evidence pertaining to arrests or charges to be admitted as harmless error, renders substantial portions of the Oklahoma Evidence Code meaningless. Title 12 O.S.2011 §2609 provides the mechanism for impeaching witnesses with evidence of certain convictions. Had the legislature intended to allow impeachment of witnesses with evidence pertaining to an arrest or criminal charges, the statute would not have been written subject to limitations. See also 12 O.S.2011 §2410 (prohibiting evidence pertaining to pleas or plea negotiations); and 12 O.S.2011 §2404 (disallowing the use of character or other bad acts of a witness).
¶3 The only reason the State introduced evidence of the arrest of the parents and criminal charges was to inflame the jury and validate its termination case. During the trial proceedings in this case, the State was allowed to not only question the Hudsons about their arrests and the charges, the trial court permitted the "information" to be admitted as an exhibit. Yet, evidence regarding their arrest and the filing of charges was wholly unnecessary and did not serve to establish "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011 §2401. The only things which were relevant to establishing the State's case were (1) whether parents committed shocking and heinous abuse of children; (2) whether children were adjudicated deprived; and (3) whether termination was in the children's best interests. See OUJI-JUV No. 3.9.
¶4 Offering testimony to show criminal charges were filed against parents was cumulative and simply "icing on the cake," designed to prejudice jurors; it was the State's method of eliminating any question in jurors' minds about whether charges had been filed (i.e., if the abuse was so bad, why were the parents not charged?). The arrest and charges were irrelevant, and therefore, should not have been admitted. 12 O.S.2011 §2402. Even if the criminal charges could arguably be construed as relevant, the cumulative nature and prejudicial effect of those charges clearly outweighed any probative value. 12 O.S.2011 §2403, see also Salt Lake City Corp. v. Gallegos, 377 P.3d 185, 192 (Utah Ct. App. 2016) (holding that evidence officer was charged with crime for alleged theft was irrelevant and cumulative evidence to underlying civil suit involving same alleged acts).
¶5 To construe the error in this case as harmless, invites attorney misconduct by allowing the solicitation of irrelevant and prejudicial evidence with no possible repercussions. Given the constitutional ramifications associated with terminating the parent-child bond, I would find admission of evidence pertaining to the criminal arrest and charges was reversible error and remand the matter for a new trial.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2005 OK CIV APP 5, 105 P.3d 354, IN THE MATTER OF T.H., M.B., and J.M.B.
Discussed
 2006 OK CIV APP 110, 144 P.3d 202, IN THE MATTER OF D.P.D.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 31, 736 P.2d 516, 58 OBJ 1246, Northwest Datsun v. Oklahoma Motor Vehicle Com'n
Discussed
 1991 OK 11, 806 P.2d 636, 62 OBJ 621, S.T.G., Matter of
Cited
 2001 OK 85, 38 P.3d 218, 72 OBJ 2934, JOHNSON v. CITY OF WOODWARD
Discussed
 1972 OK 97, 499 P.2d 380, TEAGUE v. UNITED TRUCK SERVICE
Discussed
 1973 OK 141, 516 P.2d 534, KARRIMAN v. ORTHOPEDIC CLINIC
Cited
 2002 OK 83, 64 P.3d 1080, IN THE MATTER OF S.B.C.
Discussed
 2006 OK 22, 138 P.3d 539, JERNIGAN v. JERNIGAN
Discussed
 2006 OK 80, 155 P.3d 1, IN THE MATTER OF THE ADOPTION OF L.D.S.
Discussed
 2010 OK 81, 243 P.3d 21, IN THE MATTER OF C.D.P.F.
Discussed
 1980 OK 119, 615 P.2d 287, Adoption of Darren Todd H., Matter of
Discussed
 1981 OK 11, 632 P.2d 370, LeClair v. Powers
Cited
 1981 OK 131, 637 P.2d 66, C. G., Matter of
Discussed
 1985 OK 99, 722 P.2d 1197, 56 OBJ 2780, T.R.W., Matter of
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2609, Impeachment by Evidence of Conviction of Crime
Discussed at Length
 12 O.S. 78, Court to Disregard Insignificant Errors
Cited
 12 O.S. 2104, Rulings on Evidence
Cited
 12 O.S. 2401, Relevant Evidence Defined
Cited
 12 O.S. 2402, Relevant Evidence Generally Admissible - Irrelevant Evidence Inadmissible
Cited
 12 O.S. 2403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Cumulative Nature of Evidence
Discussed
 12 O.S. 2404, Character Evidence Not Admissible to Prove Conduct - Exceptions - Other Crimes
Cited
 12 O.S. 2410, Offer to Plead Guilty - Nolo Contendere - Withdrawn Plea of Guilty
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA