Albert A. McMULLEN, individually, and Mary Ann McMullen, individually, and as parents and next friend of Mary Elizabeth McMullen, Appellees,

v.

Craig A. STEVENS, a minor, Appellant,

and

Samuel A. Hoskin, a minor, Allstate Insurance Company, an Illinois Insurance corporation, and Edwina and James Hoskin, husband and wife, Defendants.

No. 82827.

Court of Appeals of Oklahoma, Division No. 3.

Jan. 31, 1995.

Rehearing Denied March 7, 1995.

Certiorari Denied May 3, 1995.

John A. Gladd, Tulsa, for appellant.

O.B. Johnston, Vinita, for appellees.

## *OPINION*

HUNTER, Judge:

Four teenagers, classmates at Vinita High School, were involved in a two-vehicle car wreck in Craig County. Mary Elizabeth McMullen, then 15 years old, was the passenger in the car driven by her boyfriend, Appellant (Stevens). The other vehicle, a small pick-up truck, was driven by Sam Hoskin. His passenger was not a party in the lawsuit. The trial lasted three days after which the jury rendered a verdict finding Hoskin 80% negligent, Appellant 20% negligent and awarding Appellees $500,000.00 in compensatory damages. The jury also entered a verdict in favor of Hoskin's parents who had been sued on a negligent entrustment theory.

Appellant filed a motion for new trial on the grounds that Appellees' lawyer had, during voir dire and closing argument, suggested that the two teenaged drivers were covered by liability insurance and that the court coerced the jury. The trial court overruled the motion. Subsequent to the overruling of the motion for new trial, the court held a hearing on, and issued an order for, prejudgment interest. On appeal, Appellant reasserts the two grounds argued in the motion for new trial and adds the contention that the trial court erred in its award of prejudgment interest. We affirm the judgment entered on the jury's verdict but find the court erred in its setting of the prejudgment interest.

First we address Appellant's complaint that Appellees' lawyer impermissibly suggested that the drivers were covered by liability insurance. In his voir dire, Appellees' attorney stated:

> One thing that I would like for each of you to assure me is that in reaching an amount of damages that she's to receive that you will not worry about how that money will be collected. That you will reach an amount that you think would compensate her. Will each of you do that?

> (Prospective jurors indicating in the affirmative.)

> In other words, you look over here at a couple of these defendants that are 18 or 19 years of age. Will you each assure me the injuries that she received won't be lowered because they may be 18 or 19 years of age? That you won't consider that at all and you will not worry about how we will collect the money?

> Appellant's attorney: Could we approach the bench just one minute, please, Your Honor.

> Court: You may.

> (At the bench and out of the hearing of the jury.)

> Appellant's attorney: Comes now the defendant Stevens and moves for a mistrial on the basis that the plaintiffs' attorney by his question is not doing anything but to attempt to introduce improper and prejudicial statements concerning the collection. That doesn't have anything to do with their qualifications as jurors. He did it not once, but twice. And the emphasis is that there's insurance. There can be no other emphasis and I object to it and we'd move for a mistrial.

> Defendants' attorney: That is not correct. The emphasis is the concern because of their age the jury would not award the full amount because they would be concerned about their ability to pay.

> Court: I'm going to overrule the objection. I'm also going to ask that you not repeat the question anymore."

Later, in closing argument, Appellees' lawyer stated:

I want to talk to you about in assessing the damages you assured us in the voir dire that how those damages were collected would not be a concern of yours and I'd ask you to not be concerned about that and to assess the damages that we've ascribed, which we would suggest they are fair under the circumstances.

In support of its argument, Appellant cites *Matchen v. McGahey*, 455 P.2d 52, 55 (Okl. 1969). That case involved one defendant in a personal injury lawsuit. In closing argument, Plaintiff's lawyer stated to the jury:

And another thing, don't worry about our collecting a judgment or verdict against Mrs. Matchen. That's just something you don't have to worry about.

The *Matchen* court, at 55, held that under the circumstances of that case, where liability was vigorously contested, Plaintiff's argument that the judgement would be collected from someone other than the defendant improperly suggested the existence of liability insurance. In this case, the court held that the motion for mistrial should have been granted. We too consider the circumstances of each case. In our case, there were four defendants, not one. Reversible error in the kind of statement at issue occurs when the "don't worry about how we will collect the judgment" phrase identifies a defendant as having liability insurance. *Williams v. Safeway Stores, Inc.*, 515 P.2d 223, 226 (Okl.1973) (juror statement), *Lilly v. Scott*, 598 P.2d 279, 283 (Okl.App.1979) (witness statement). We find that the "collection" statement did not identify a defendant as being covered by liability insurance because (1) there were more than one defendant and (2) the lawyer directly related his "collection" statement to the youthful ages of two of the defendants.

■ Next Appellant contends the trial court erred when it coerced the jury into rendering a verdict. The jury convened at 3:30 in the afternoon and rendered its verdict at 8:45 that same night. During that time, the jury sent the judge a note saying it was hung and asking for its options. The court responded by note stating "You are reminded that any 9 jurors may reach a verdict. Please continue your deliberations." At 8:15 that night, the jury sent its second note to the court stating it was still hung, citing lack of evidence as the problem. The foreman ended the note saying, "Unable to obtain that evidence, we feel we will never have any (9) nine people agree. We feel to be fair to the parties involved that a new trial or new jury may be the answer." The court then called the parties and the jurors back to the courtroom and stated:

I have received your note and I'm somewhat disturbed by it. Of course, you realize that a lot of time and a lot of money has been expended in trying this case. If we retry the case, the next jury is going to hear essentially just exactly what you've heard. The evidence won't be any different. And, of course, the expense is going to go up.

I do not wish any of you, and I'm not asking any of you to retreat from a position which you feel in your conscience is right. But I would ask all of you to examine your position again and see if it is reasonable. Listen again to the position of the other jurors and make an honest attempt at arriving at a verdict. I realize the hour is late. None of us have had any supper. But let's try again. Let's make an effort. I won't set a time limit, but please try again.

The jury returned a 9–3 verdict within half an hour of the oral statement to it. Appellant fails to present any evidence in the record that the court coerced a verdict from the jurors. *Chamberlin v. Chamberlin*, 720 P.2d 721, 723–724 (Okl.1986). Deliberations lasting five and three-quarters hours are not prima facie evidence of court coercion of a jury. The record also reveals the court acted properly in its communications with the jury. *Kahan v. Pure Oil Co.*, 186 Okl. 493, 98 P.2d 894, 495 (1940).

■ Finally, we find the trial court erred in the amount it assessed as prejudgment interest. Pursuant to 12 O.S.1991 § 727(A)(2) and (B), the trial court is required to set the amount of prejudgment interest at the annual rate of the average U.S. Treasury Bill rate of the preceding calendar year, plus four percentage points. In January of each year, the Administrative Director of the Courts certifies this rate. In

*Fleming v. Baptist General Convention,* 742 P.2d 1087, 1097 (Okl.1987), the court stated: "Thus prejudgment interest is to be assessed at the rate provided by statute *at the time of the verdict* and the trial court did not err in so affixing that interest to the judgment." (emphases ours). In our case, the court accepted the verdict on November 27, 1993. Consequently, prejudgment interest, assessed from the time of filing the petition, in this case January, 1992, until the time the court accepted the verdict in 1993, should have been set at the rate as certified by the Administrative Director of the Courts in January, 1993.

Appellant argues that the prejudgment interest rate should vary with each year's variance until the judgment is paid. There is no authority supporting that position. We reject Appellant's argument for varying the rate.

For these reasons, we affirm the judgment based on the jury's verdict. We reverse the court's order setting the prejudgment interest rate as it existed on the date of filing the petition and remand the matter to the court with directions to set the prejudgment interest rate as it existed by statute on the date it accepted the jury's verdict.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

ADAMS, J., concurs.

GARRETT, C.J., concurs in part and dissents in part:

In my opinion, *Matchen v. McGahey,* 455 P.2d 52, 55 (Okla.1969) requires this case to be reversed.