IN THE MATTER OF A.H.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF A.H.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF A.H.
2021 OK CIV APP 39
Case Number: 118662
Decided: 09/15/2021
Mandate Issued: 10/21/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 39, __ P.3d __

 
IN THE MATTER OF A.H., Alleged Deprived Child:
PHEBE HUMPHREY, Appellant,
v.
STATE OF OKLAHOMA, Appellee.
APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA
HONORABLE STEPHEN W. BONNER, TRIAL JUDGE
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS
Scott T. Banks, BANKS LAW, PLLC, Norman, Oklahoma, for Appellant
Casey Crook, Amy M. Taylor, Michael Patlan, ASSISTANT DISTRICT ATTORNEYS, CLEVELAND COUNTY DISTRICT ATTORNEY'S OFFICE, Norman, Oklahoma, for Appellee
Holly Iker, BIC LEGAL, PLLC, Norman, Oklahoma, for Minor Child
DEBORAH B. BARNES, JUDGE:
¶1 In this termination of parental rights proceeding, Appellant Phebe Humphrey (Mother) appeals from an order of the trial court entered upon a jury verdict terminating her parental rights to her minor child, A.H. Based on our review of the appellate record, we reverse and remand for further proceedings.
BACKGROUND
¶2 Unlike many appeals concerning the termination of parental rights, Mother raises no arguments concerning the sufficiency of the evidence presented by Appellee State of Oklahoma as to the ground for termination found by the jury and the child's best interests. Mother only urges two procedural errors for reversal of the order of termination. Consequently, we abbreviate our recitation of the circumstances leading to the petition for termination.
¶3 In May 2017, A.H., born August 2013, was placed in the custody of the Department of Human Services (DHS) by emergency order.[1] Upon petition of State, A.H. was adjudicated deprived on July 12, 2017. Mother, represented by counsel, and child's attorney stipulated to the petition as amended. An Individualized Service Plan (ISP) was developed for Mother and various services were recommended. On January 17, 2020, State filed an amended motion for termination of Mother's parental rights[2] on the ground that she failed to correct the conditions that caused A.H. to be deprived pursuant to 10A O.S. § 1-4-904(B)(5). Specifically, State alleged Mother failed to correct the conditions of substance abuse, neglect, physical abuse, and "untreated mental health" though given at least three months to correct those conditions. State also filed its motion alleging termination because A.H. was placed in foster care by DHS for a period of six of the most recent twelve months preceding the motion and he cannot be safely returned to Mother pursuant to 10A O.S. § 1-4-904(B)(17).[3] State alleged it was in A.H.'s best interest that Mother's parental rights be terminated.
¶4 The matter was set for jury trial. A three-day trial was held in January 2020. The jury returned a 5-1 verdict terminating Mother's parental rights to A.H. on the ground of time spent in foster care, and on January 21, 2020, the trial court entered its order terminating Mother's parental rights. Mother appeals.
STANDARD OF REVIEW
¶5 Mother argues, in effect, that she was denied a fair trial because the trial court abused its discretion in disallowing her counsel to question the voir dire panel about State's burden of proof. "Under Oklahoma law, the manner and extent of voir dire is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." Holm-Waddle v. William D. Hawley, M.D., Inc., 1998 OK 53, ¶ 13, 967 P.2d 1180 (citation omitted).
¶6 Mother also asserts she was denied a fair trial because of an oral, "supplemental" instruction given to the jury.
We may not set aside a verdict for misdirection of the jury unless the error "has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 20 O.S. 2011 § 3001.1. In a parental rights termination case challenging a jury instruction and a procedural matter, the trial court's judgment may be reversed "when error constitutes a substantial violation of a constitutional or statutory right." In re T.T.S., 2015 OK 36, ¶ 15, 373 P.3d 1022, 1028 (citing § 3001.1).
In re K.H., 2021 OK 33, ¶ 30, __ P.3d __ (footnote omitted). Accord Nicholson v. State, 2018 OK CR 10, ¶ 13, 421 P.3d 890 (no error found where further written instructions to jury given after it began deliberations with consent of counsel, overruling several cases where implication was that jury must be recalled to courtroom and counsel must be present before further instructions are given (emphasis omitted)).
ANALYSIS
¶7 Mother asserts the following three propositions of error on appeal: the trial court erred and abused its discretion (1) in disallowing her to question the voir dire panel on the specific burden of proof to be applied in the case; (2) in giving its supplemental instruction to the jury when the jury stated it was deadlocked; and, thus, (3) in coercing the jury to terminate her parental rights. We treat the second and third propositions together.
I. Questioning the Voir Dire Panel on State's Burden of Proof
¶8 Mother argues the trial court abused its discretion in disallowing her counsel to question the panel on what it thinks clear and convincing evidence means, disallowing him to define the burden, and requiring him to keep his inquiry regarding the State's burden "vague." The trial court stated, "You can't ask them. You have to be careful where you are at at this particular point in time because the Court is going to read the instructions on what that is." Mother's counsel argued the panel should have that definition during voir dire and be asked whether they can hold State to that burden. Mother argues on appeal that her counsel "was denied the ability to inquire about the clear and convincing evidence standard and whether or not the jurors could grasp the concept and apply it to the current case even though [State] brought up [the] burden of proof in [its] own voir dire."
¶9 State's counsel did inform the panel that State's burden of proof is clear and convincing evidence, but further stated, "The Judge will tell you about that later." State's counsel continued, stating, "I'm not going to talk about what that burden is. But once you get the definition, do you all promise that you will apply that definition to the facts and evidence you hear today and come to a verdict?" State's counsel informed the panel that State had to prove the allegations and that it was not Mother's burden to disprove them. She stated, "once you guys find out the burden, you might want a different burden, but will you apply the law that the Judge gives you?" Upon a question from a prospective juror asking what State's counsel meant, counsel replied:
So there are different burdens of proof in the law and I can't get into what this one is. The Judge will tell you that later. But you might want it to be a higher burden or a lower burden. And I'm asking if you will follow the law that's given to you to reach that burden?
The panel agreed to do so. State's counsel again later asked the panel if it could terminate Mother's parental rights if "State does what it needs to do and proves by beyond -- not beyond a reasonable doubt, but by clear and convincing evidence that . . . each element is met?" The panel responded, "Yes." Thus, while State referenced the burden, it did not attempt to define it or to question the panel members about what they thought the burden of proof entailed. 
¶10 Pursuant to Rule 6 of the Rules for the District Courts, 12 O.S. 2011 & Supp. 2013, ch. 2, app.:
The judge shall initiate the voir dire examination of jurors by identifying the parties and their respective counsel. [The judge] may outline the nature of the case, the issues of fact and law to be tried, and may then put to the jurors any questions regarding their qualifications to serve as jurors in the cause on trial. The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination.
Although counsel for State referred in her voir dire to State's burden of proof for termination as "clear and convincing evidence," the trial court prohibited Mother's counsel from advising the jury what that meant, even after a prospective juror specifically asked State's counsel what she meant by that phrase. For the following reasons, we conclude this prohibition was an abuse of discretion that must be corrected on remand.
¶11 Without explanation, the trial court prohibited defining "clear and convincing evidence" for the jury[4] until after the evidence was concluded. Oklahoma Uniform Jury Instruction-Juvenile No. 2.5, "Burden of Proof for Termination of Parental Rights,"[5] has expressed State's burden governing termination proceedings of this kind for a considerable time, harkening back to In re C.G., 1981 OK 131, 637 P.2d 66. In C.G., the Court said:
Although the precise issue before us remains unsettled by federal case law, we believe that a § 1130[6] parental-status termination calls for such an extreme public-law redress that due process under Art. 2 § 7, Okl. Const. requires of the state proof more substantial than that afforded by the standard of the clear weight of the evidence. The law's policy must demonstrate the very same solicitude in guarding against a mistaken parental-bond severance as it does in its vigilant protection against wrongful mental health commitments. The clear-and-convincing standard balances the parents' fundamental freedom from family disruption with the state's duty to protect children within its borders. It places an appropriately heavy burden upon the § 1130 petitioner (termination-seeking party) to overcome the law's policy which identifies the child's best interest with that of its natural parents. We hence hold that in § 1130 litigation the termination-seeking claimant must prove by clear-and-convincing evidence parental potential for harm to the child by abuse or neglect. 
Id. ¶ 17 (footnotes omitted). As the Court held in C.G., a parent's important, fundamental, indeed constitutional, interests in raising her own child are at stake. The clear and convincing standard is traditionally applied in equity when important interests are at stake. Id. ¶ 15. Due process requires a standard higher than preponderance of the evidence but less demanding than beyond a reasonable doubt; the clear and convincing standard balances the parent's fundamental right to freedom from disruption of her family with State's duty to protect children within its borders. Id. ¶¶ 16-17.
¶12 This burden of proof is not an unsettled area of law, and we are bound by the Uniform Instructions when, as here, the facts require their application. The trial court and counsel for the parties are all familiar with, and bound by, OUJI-Juvenile No. 2.5. The better practice is for the trial court in its initial voir dire to advise the panel that State must prove its case for termination of Mother's parental rights by clear and convincing evidence and to define that evidence according to OUJI-Juvenile No. 2.5. The court may wish to assure the panel that they will also be provided written instructions on the burden of proof as well as other aspects of applicable law before they deliberate.
¶13 Even if the trial court does not address the burden of proof in its voir dire, allowing counsel to examine potential jurors on this aspect of the case does not usurp the court's duty to instruct the jury. It allows counsel to advise the potential jurors that counsel anticipates the court will instruct them that State's burden before parental rights may be terminated is clear and convincing evidence as defined by OUJI-Juvenile No. 2.5. Allowing such inquiry enables counsel to uncover actual or implied bias and to intelligently exercise peremptory challenges on this crucial issue in the case.[7] If either State or Mother misstates or deviates from OUJI-Juvenile No. 2.5's substance and meaning in discussing State's burden of proof in voir dire and in questioning prospective jurors about it, opposing counsel will certainly object and the court may always intercede to correct the error so jurors are not misled or confused.[8]
¶14 Under the circumstances of this case, where State informed the voir dire panel of the burden of proof but the trial court disallowed Mother the opportunity to define the burden of proof, we conclude the trial court abused its discretion. Because consideration of Mother's second issue below pertaining to the trial court's "supplemental" instruction to the jury requires reversal and remand for further proceedings, the court's erroneous ruling on this voir dire issue is also reversed and remanded for correction in further proceedings consistent with this Opinion.
II. "Supplemental" Instruction
¶15 After a little more than three hours of deliberation, the jury returned and the foreman informed the court it was deadlocked.
[9] The following exchange occurred:
THE COURT: You all have been going at it a couple of hours. If we need to order dinner for you, we will. But you need to go and have a decision. This is too important. These effect (sic) lives, one of which has been in DHS custody for half that person's life. They need to know which way it's going. [Mother] needs to know which way it's going.
So I thank you for your efforts. If we need to order some pizza or something for dinner, it takes about 45 minutes, I would be glad to do so. But you need to return to your deliberations. Thank you. We're in recess.
[10]
A little more than an hour later, the jury returned a 5-1 verdict terminating Mother's parental rights to A.H. on the ground that he was in foster care for six out of the last twelve months preceding the motion to terminate parental rights, that at the time of filing he could not be safely returned to Mother's home, and that termination was in A.H.'s best interest. In answer to the court's question, the foreman stated the jury did not find termination on the ground of failure to correct conditions. The jury was polled and each juror confirmed his or her agreement with the verdict.
¶16 The trial court did not give the "supplemental" instruction pursuant to 12 O.S. 2011 § 582.[11] The jury foreman informed the trial court that after several hours of deliberation, the jury was deadlocked and no disagreement as to any testimony or need for information concerning the law was requested by the jury. The court's instruction admonishing the jury to continue deliberating, characterized as a "verdict-urging instruction,"[12] does not "amount to a positive direction as to the law of the case" and is not "regarded as an instruction within the meaning of [§ 582.]" Kahan v. Pure Oil Co., 1940 OK 44, ¶ 3, 98 P.2d 894 (per curiam) (citation omitted).
¶17 While in criminal cases, a specific Uniform Instruction concerns deadlocked juries,
[13] no comparable instruction is provided in OUJI for civil or juvenile cases. However, 12 O.S. 2011 § 577.2 provides, in part: "Whenever OUJI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial and free from argument."[14] Thus, while the trial court in this case did not give the jury a supplemental instruction on the law applicable to the case, it did give an instruction it believed was needed to urge the deadlocked jury to deliberate further and reach a verdict.[15] Although the trial court did not intend to coerce or influence the jury, the instruction, while simple and brief, was not impartial and conveyed the trial court's feelings about the evidence, and acted to focus the jury's attention on one element of one of the grounds for termination of Mother's parental rights.[16] Though unintentional, the court's instruction conveyed to the jury the ground for termination it should continue to deliberate and to decide. This was error.
¶18 The instruction here stands in contrast to the instructions found to be error-free in Kahan and McMullen. In Kahan, a negligence action, the jury reported it was unable to reach a verdict after a few hours of deliberation. The court admonished the jury to deliberate further, stating:
I want you to deliberate longer on this case. I do not want you to arrive at a compromised verdict or any man on the jury to yield his honest opinion, but it is important that you reach a verdict, if you can honestly and conscientiously do so, on the evidence and the law. I have been on the bench thirteen years and during that time, as I recall, have only had four hung juries. I had one yesterday and now you gentlemen are unable to arrive at a verdict today. I do not mean to say that indicates there is anything wrong with the panel, but it does indicate to me that you should deliberate further in this case and give it further careful consideration. Now, I want you to go back to your jury room without any personal feeling in the matter because you should have no personal feeling. It should not matter to you or to the court how this case is decided further than to see that absolute justice is done under the law and the evidence and that matters greatly to both of us. Therefore, do not permit any feeling to creep into your deliberation by virtue of the fact that you have been unable to agree upon a verdict so far but sit down and discuss carefully the evidence in this case and the instructions of the court because in every case it should be always possible to arrive at a true and correct verdict and even though men may honestly differ, if they are able to see the facts and the law in the correct light, there should be no difference in opinion but they should all arrive at the same opinion. For that reason I want you to deliberate further on this case, at least until twelve o'clock, and see if you cannot reach a verdict, but again I want to impress upon you that I do not want a compromised verdict or any man to compromise his honest convictions in this case, but rather on the other hand to insist upon his honest convictions but go into the evidence and the instructions carefully and thoroughly to ascertain whether or not it might be possible that he is wrong and the jurors who take the opposite view are right. Return to your jury room, gentlemen, and see if it is possible to arrive at a verdict.
Id. ¶ 1. The jury deliberated for another thirty minutes then returned a verdict for the defendant. As to the trial court's remarks to the jury, the Supreme Court stated:
It will be noted that the remarks addressed by the court to the jury in the case at bar nowhere attempt to advise the jury upon the law or the evidence, but merely call their attention to the necessity of attempting to perform the duty which rested upon them to arrive at a just decision in the cause which they had under consideration. That such language does not amount to an instruction has been the almost unanimous conclusion of the courts. See annotations in 109 A. L. R. 75 [superseded by later annotations]. It is further generally held that the trial court has a wide and extended discretion in determining whether a mistrial should be declared or the jury required to deliberate further upon a cause before being discharged, and where such discretion is not abused, the appellate courts will not disturb the action of the trial court. We are of the opinion that in the case at bar the record fails to show any abuse of discretion by the trial court in admonishing the jury in the language employed[.]
Kahan, ¶ 4 (emphasis added).
¶19 Likewise, in McMullen no error was found in the instruction the trial court gave to the deadlocked jury. There, after several hours of deliberation,
the jury sent the judge a note saying it was hung and asking for its options. The court responded by note stating, "You are reminded that any 9 jurors may reach a verdict. Please continue your deliberations." At 8:15 that night, the jury sent its second note to the court stating it was still hung, citing lack of evidence as the problem. The foreman ended the note saying, "Unable to obtain that evidence, we feel we will never have any (9) nine people agree. We feel to be fair to the parties involved that a new trial or new jury may be the answer." 
Id. ¶ 6. The trial court then called the parties and the jury back into the courtroom and stated:
I have received your note and I'm somewhat disturbed by it. Of course, you realize that a lot of time and a lot of money has been expended in trying this case. If we retry the case, the next jury is going to hear essentially just exactly what you've heard. The evidence won't be any different. And, of course, the expense is going to go up.
I do not wish any of you, and I'm not asking any of you to retreat from a position which you feel in your conscience is right. But I would ask all of you to examine your position again and see if it is reasonable. Listen again to the position of the other jurors and make an honest attempt at arriving at a verdict. I realize the hour is late. None of us have had any supper. But let's try again. Let's make an effort. I won't set a time limit, but please try again.
Id. Within thirty minutes, the jury returned a 9-3 verdict. The appellate court concluded five and three-quarters hours deliberation was not "prima facie evidence of court coercion of a jury" and that the "record also reveals the court acted properly in its communications with the jury." Id. ¶ 6 (citing Kahan).
¶20 As Kahan and McMullen make clear, it is not objectionable for a trial judge to admonish a jury in general terms and without reference to other considerations that it is desirable and important for the jury to reach a verdict. However, unlike the statements in Kahan and McMullen, here the trial court did not tell the jury that each juror must not "retreat from a position [the juror] feel[s] in [his/her] conscience is right," or "arrive at a compromised verdict" or "yield his[/her] honest opinion, but it is important that you reach a verdict, if you can honestly and conscientiously do so, on the evidence and the law," or make any statement to that effect. Unlike the facts in the present case, no comment in Kahan and McMullen was made regarding any of that evidence and no inference could be drawn that the trial court was urging jurors to reach consensus because that was what the trial court thought should occur. See, e.g., Jacobsen v. Gamber, 86 N.W.2d 147, 149 (Iowa 1957) (noting error found where instructions "contain expressions, veiled or otherwise, of the court's opinion of what [the jury] should do.").
¶21 This conclusion also finds support in cases decided by the Oklahoma Court of Criminal Appeals.
[17] The Court of Criminal Appeals has "found no error in the giving of Allen instructions after the jury has announced itself to be dead-locked after several hours of deliberation," and that "it is not improper for a trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is a reasonable probability of reaching a verdict so long as the judge exercises great caution to say nothing to coerce an agreement or to indicate his feelings in the case." McCarty v. State, 1995 OK CR 48, ¶ 51, 904 P.2d 110, "overruling risk" on other grounds, Crawford v. Washington, 541 U.S. 36 (2004) (citations omitted) (emphasis added). The McCarty Court said the question before it was "whether the giving of the Allen instruction coupled with the repeated questioning of the jury and the foreman about whether further deliberations would be useful, constituted an unduly coercive process in this case. We find that taken in context, the inquiry made by the trial court to the foreman was not coercive, but instead, merely asked for clarification of the situation." Id.
¶22 In circumstances where the claimed error is reviewed for plain error, the focus is on whether the trial court's instruction influenced the jury's decision-making process. For example, in Brown v. State, 2018 OK CR 3, 422 P.3d 155, the defendant "claim[ed] that the trial court's [three-minute] directions to the jury regarding ordering pizza coerced them into reaching a first stage verdict without proper deliberations." Id. ¶ 114. The jury then retired to deliberate and about forty-five minutes later reached a verdict. While the defendant claimed the "lecture about pizza" caused the jury to return a verdict without due deliberations, he did not object to the instruction at trial. The Brown Court, therefore, limited its review to plain error. Although in the present case Mother did object to the instruction, the Brown Court's discussion is instructive:
Instructions given to the jury are a matter of judicial discretion. Postelle v. State, 2011 OK CR 30, ¶ 38, 267 P.3d 114, 132. There are no Uniform Jury Instructions on the ordering of dinner; therefore, the trial court is bound only by existing law and good judgment. 
If the court determines that jurors should be instructed on a matter not included within the Uniform Jury Instructions, the court should give an instruction that is "simple, brief, impartial and free from argument." 12 O.S. 2001 § 577.2. 
Id. ¶ 55, [267 P.3d] at 137, citing Johnson v. State, 2009 OK CR 26, ¶ 4, 218 P.3d 520, 522. A trial court's instructions should never influence jurors in their decision-making process. Johnson, 2009 OK CR 26, ¶ 4, 218 P.3d at 522. In this case, there is no indication that the instruction influenced the jurors to reach a verdict. No plain error occurred in this instruction, as the instruction did not affect the outcome of this case.
Brown, ¶ 115 (emphasis added).
¶23 State argues the instruction given here is more like the circumstances in Postelle rather than those in Johnson, the authority upon which Mother relies. In Johnson, the defendant asserted "the trial court abused its discretion by the manner in which voir dire was conducted." 2009 OK CR 26, ¶ 4. While "[a]n important aspect of voir dire is to educate prospective jurors on what will be asked of them under the law," the Johnson Court cautioned:
the trial court is not to influence the jurors in their decision making process. The Oklahoma Uniform Jury Instructions -- Criminal (2d) are comprehensive instructions which follow a chronology designed to give jurors as much information as they need about the trial proceedings. Trial courts should follow the introductory information provided in the Oklahoma Uniform Jury Instructions. If the court determines that jurors should be instructed on a matter not included within the Uniform Jury Instructions, the court may give an instruction that is simple, brief, impartial and free from argument. 12 O.S. 2001 § 577.2. Analogies and examples may be used to illustrate the uniform opening instructions, but trial courts should be objective and careful not to appear to guide the jury to a particular decision. See McCarty v. State, 1995 OK CR 48, ¶ 51, 904 P.2d 110, 125 (trial court required to exercise great caution to say nothing to coerce an agreement or to indicate [its] feelings in the case.). 
Johnson, ¶ 4 (internal quotation marks omitted). Moreover, State argues that unlike the single statement made here, the Johnson Court stated "many of the remarks of the trial judge during voir dire were improper and may have had a coercive effect upon the jury." Id. ¶ 6. The Johnson Court held, "While the trial court . . . incorporated material from the uniform instructions, the court's emphasis on the potential cost of the proceedings and potential consequences of the jurors' failure to follow the court's instructions was improper." Id. ¶ 5 (footnote omitted).
¶24 State argues the instruction given in this case is more like the instructions given in Postelle and distinguishable from those in Johnson. The Postelle Court agreed with the Johnson Court that the trial court must not influence jurors in their decision-making process. Postelle, 2011 OK CR 30, ¶ 55. "The court's remarks in Johnson about the deliberation process were premature and amounted to a preemptive deadlocked jury charge." Id. ¶ 56 (citation omitted). The Postelle Court explained:
The remarks in Postelle's case are nothing like those condemned in Johnson. The trial court judge discussed neither the costs of the proceedings nor the ramifications of failing to follow the court's instructions. The court's commentary that was in addition to the material in the uniform instructions focused on the presumption of innocence, the burden of proof and some procedural aspects of the deliberation process. Contrary to Postelle's claim, the court's remarks concerning deliberations -- that the jury would not be allowed to communicate with outsiders or separate until a verdict was reached -- did not compel jurors to hastily return a guilty verdict. The court emphasized that there was no time limitation on deliberations and that meals, if necessary, would be provided. Never did the trial court tell prospective jurors what verdict they should reach. Nor does our review of the record support Postelle's claim that the court's remarks somehow skewed deliberations in favor of the prosecution or otherwise undermined the presumption of innocence. The court's comments were accurate statements of the law that were neither coercive nor encouraged jurors to abandon their personal beliefs to reach a verdict. 
Id. ¶ 57 (footnote omitted).
¶25 We disagree with State's conclusion that the verdict-urging instruction given by the trial court here is more like the instruction given by the trial court in Postelle. Significantly, unlike the instruction given in Postelle, the instruction given in this case "skewed deliberations in favor" of a particular ground for termination of Mother's parental rights. As did the Court in Johnson, we conclude the trial court's instruction erroneously intruded upon the jury's decision-making process.
¶26 Having determined the statement was in error, we also conclude the error was fundamental.
[18] Although not available to the parties at the time of this appeal, we find instructive the Oklahoma Supreme Court's decision in K.H. In K.H., the parents appealed from a judgment on a jury verdict terminating their parental rights to their minor children. Among the errors alleged, the parents argued the trial court violated their due process rights because it gave an instruction that referenced felony child abuse charges that had been brought against them.[19] The Supreme Court concluded the trial court abused its discretion in instructing the jury with the reference to the criminal charges because "[t]he filing of criminal charges against Mother and Father are not material allegations of the petitions based on the heinous and shocking ground for termination of parental rights [alleged in the case.]" Id. ¶ 47 (footnote omitted). The Court, therefore, concluded the trial court erred by failing to delete those allegations from the instruction.
¶27 In reaching its decision, the Court reiterated long-standing Oklahoma jurisprudence about the fundamental interest at stake in termination proceedings and the nature of a parent's right to a fair trial. The Court stated:
Parents have a "constitutionally protected liberty interest in the continuity of the legal bond with their children." In re A.M. & R.W., 2000 OK 82, ¶ 8, 13 P.3d 484, 487. "The fundamental nature of parental rights requires that the full panoply of procedural safeguards must be applied to child deprivation hearings." Id. (quoting In re Chad, 1978 OK 94, ¶ 12, 580 P.2d 983, 985).
"A fair trial in a fair tribunal is a basic requirement of due process." Cary v. ONEOK, Inc., 1997 OK 60, ¶ 15 n.33, 940 P.2d 201, 212 (Opala, J., dissenting) (quoting In re Murchison, 349 U.S. 133, 136 (1955)). "An impartial jury is, of course, an indispensable ingredient of a fair trial, which is assured by the fundamental law's due process guarantee." Id. (citing Agee v. Gant, 1966 OK 31, 412 P.2d 155, 162). "The right to a fair trial is a substantial constitutional right" which a trial court has a duty to ensure. Taliaferro v. Shahsavari, 2006 OK 96, ¶ 32, 154 P.3d 1240, 1249.
K.H., ¶¶ 26-27. Claimed errors in jury instructions are procedural issues. Id. ¶ 30 n.16 (citing Teague v. United Truck Serv., 1972 OK 97, ¶ 14, 499 P.2d 380; and Threadgill v. Anderson, 1956 OK 91, ¶ 0, 303 P.2d 297 (Syllabus by the Court)).
¶28 We conclude the trial court's verdict-urging instruction to the jury was improper because it expressed the trial court's view about an element of one of the grounds for termination of Mother's parental rights and thus acted improperly to influence the jury's decision-making process. Because proceedings to terminate parental rights implicate fundamental, constitutionally protected interests of a parent to a fair trial, such interference in the jury's decision-making process constitutes a substantial violation of a constitutional right. Consequently, we reverse the order terminating Mother's parental rights and remand for further proceedings.
[20]
CONCLUSION
¶29 From our review of the record, we conclude under the circumstances of this case that the trial court abused its discretion in failing to allow Mother to define the burden of proof to the voir dire panel. We further conclude the trial court committed a fundamental error in its verdict-urging instruction to the jury because the court invaded the jury's decision-making process, and, as a result, Mother was deprived of a fair trial. Consequently, we reverse the order of termination and remand for further proceedings.
¶30 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
WISEMAN, P.J., and HIXON, J. (sitting by designation), concur.
FOOTNOTES
[1] A.H. was placed in foster care and has remained with the same foster family throughout these proceedings.
[2] State previously filed a motion to terminate Mother's parental rights on May 14, 2019. The difference between the motion and amended motion is as to time in foster care because A.H. was under the age of four years at the time he was placed in DHS custody.
[3] Title 10A O.S. 2011 & Supp. 2015 § 1-4-904(B)(17) provides, in part, as follows:
A finding that a child younger than four (4) years of age at the time of placement has been placed in foster care by [DHS] for at least six (6) of the twelve (12) months preceding the filing of the petition or motion for termination of parental rights and the child cannot be safely returned to the home of the parent.
[4] Although we agree that counsel should not be allowed to ask a prospective juror to speculate about what "clear and convincing evidence" means, as Mother's counsel did, we agree with Mother that the trial court should not have prohibited her counsel from defining that term and inquiring about it with the voir dire panel. The court told Mother's counsel in a bench conference that he could not ask them about clear and convincing evidence and could not define it for them, but had "to be vague with them" on the subject.
[5] OUJI-Juvenile No. 2.5 states:
The State has the burden of proving all the requirements for the termination of the parent's rights by clear and convincing evidence and you may return a verdict finding that parental rights are terminated only if you find that the State has satisfied its burden of proof. 

When I say that a party has the burden of proving any proposition by clear and convincing evidence, I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which the party has this burden of proof is highly probable and free from serious doubt.

[6] Title 10 O.S. § 1130 is a statutory predecessor to 10A O.S. § 1-4-904 addressing termination of parental rights where the child has been adjudicated to be deprived.
[7] We note the language in Eizember v. State, 2007 OK CR 29, 164 P.3d 208, in which the Court of Criminal Appeals stated, "An important aspect of voir dire is to educate prospective jurors on what will be asked of them under the law," and further, "It is the voir dire process which allows counsel and court alike to determine whether the prospective jurors can in fact follow their instructions and oath and whether there are grounds to challenge a potential juror." Id. ¶ 40.
[8] Studies have shown that when the issue comes down to whether to advise jurors of a crucial, and well-settled, aspect of the law -- probably foreign to the average juror -- before the evidence is presented, when it might be most helpful in deciding disputed facts, or to deprive them of that information until the end of the trial when minds may already be made up, the better practice is whenever possible to increase the jury's understanding and acceptance of the standard to be applied in reaching such an important decision. See, e.g., Stephen D. Sussman and Thomas M. Melsheimer, Trial by Agreement: How Trial Lawyers Hold the Key to Improving Jury Trials in Civil Cases, 32 Rev. Litig. 431, 457 (Summer 2013). See also Juror Comprehension and Public Policy: Perceived Problems and Proposed Solutions, 6 Psychol. Pub. Pol'y & L. 788, 814 (2000) (These reforms "specifically endorse the practice of instructing jurors on important aspects of the law before the trial (as well as afterward), so that they will know the criteria that define the differences between the verdict choices before they hear the evidence."); Max Rogers, Laypeople As Learners: Applying Educational Principles to Improve Juror Comprehension of Instructions, 115 Nw. U.L. Rev. 1185 (2021).
[9] Mother asserts no error concerning the instructions the court gave to the voir dire panel, or the cautionary instructions administered to the jury panel, including the jury's duties, or the instructions given after the evidence and prior to deliberations, including the statement of the case informing the jury of the two grounds asserted by State for the termination of Mother's rights.
[10] Mother's counsel made an oral motion for mistrial outside the presence of the jury.
[COUNSEL FOR MOTHER]: Judge, I would just like to make a record for the record, if you will. I'm going to make an oral motion for a mistrial based on when we came in this past time and we understood the jury was deadlocked 4/2 and the statement was, "the child has been in DHS custody half his life, he needs to know," then there was a pause that may not be reflected in the transcript at that time, and then you did say, "[M]other needs to know as well." But I feel that may have prejudiced the jury respectfully, and I ask for a mistrial at this time.
[ATTORNEY FOR STATE]: The State is going to argue that it was a harmless error and that we have no idea which way the jury was going in that 4/2. And we have no idea what their decision is ultimately at this time.
[ATTORNEY FOR CHILD]: I'm in agreement with the State.
THE COURT: And I do not -- if it was an error, I did not mean it to be. The child and the mother both need to know.
The court denied the motion "at this time. If they keep going, we may need to anyway, if they can't get it. We just need to get them to a point in time."
[11] Section 582 provides:
After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given in writing, and the court may give its recollections as to the testimony on the point in dispute, or cause the same to be read by the stenographer in the presence of, or after notice to, the parties or their counsel.
[12] See, e.g., "Verdict-urging instructions in civil case stressing desirability and importance of agreement," 38 A.L.R.3d 1281. These types of instructions have also been referred to as potentially coercive instructions. See, e.g., McMullen v. Stevens, 1995 OK CIV APP 8, ¶ 6, 895 P.2d 302.
[13] OUJI-CR No.10-11. The charge, known as an Allen instruction, was announced in Allen v. U.S., 164 U.S. 492 (1986), and, according to the OUJI comments, has been accepted as a model of fairness by the Oklahoma Court of Criminal Appeals.
[14] See also OUJI-CIV 3d (Rev. 2009). The "Introductory Note on Use of Instructions" provides, in part:


The Committee recognizes that claims and defenses will be presented that are not covered by any of these Instructions. In that event, the trial court should prepare an instruction that accurately states the law applicable to the claim or defense. The instructions in this book should be modified where appropriate to fit the facts and circumstances of the particular case. In preparing additional instructions or when modifying a recommended instruction, the trial judge should prepare an instruction which is simple, brief, impartial, and free from argument.


[15] The trial court's discretion to control the case includes a reminder to the jury of its duties. Kahan, ¶ 4. The trial court correctly gave OUJI-Juvenile No. 1.8 at the close of the evidence as follows:
It is now my duty to further explain your duties as jurors, and to further inform you of the law applicable to this case. It is your duty to faithfully perform your duties and to accept and follow all instructions of the law as a whole, including the instruction I gave you at the beginning of this trial [and the instructions I gave you during the course of this trial]. You are not free to accept and follow one or more of these instructions and disregard the other.

A written copy of all instructions will be given to you before you begin your deliberations.

[16] The court previously instructed the jury in accord with OUJI-Juvenile No. 3.26 as follows:
The State seeks to terminate the parent's rights on the basis that the child has been in foster care for at least 6 months. In order to terminate parental rights on the basis that the child has been in foster care for at least 6 months, the State must prove by clear and convincing evidence each of the following:
1. The child has been adjudicated to be deprived;
2. The child has been placed in foster care by [DHS] for at least 6 months out of the most recent 12 months before the filing of the motion. You are instructed that the child entered foster care on July 12, 2017;
3. The parent was responsible for the child's being in foster care for at least 6 of the most recent 12 months;
4. The child could not, at the time of the filing of the motion, be safely returned to the home of the parent; and,
5. Termination of parental rights is in the best interests of the child.
In deciding whether to terminate parental rights on the basis that the child has been in foster care for at least 6 months, you may consider:
1. The circumstances of the parent's failure to develop and maintain a parental bond with the child in a meaningful and supportive manner; and
2. Whether allowing the parent to have custody would likely cause the child actual serious psychological harm or harm in the near future as a result of the removal of the child from the substitute caregiver due to the existence of a strong, positive bond between the child and caregiver.
As noted in the Committee Comments to the instruction,
The Oklahoma Court of Civil Appeals stated in Matter of M.C., 1999 OK CIV APP 128, ¶ 6, 993 P.2d 137, 139, that "the plain purpose [of this provision] is to protect children from extended foster care."
The third element in the instruction is included because of the ruling by the Oklahoma Court of Civil Appeals in Matter of C.R.T., 2003 OK CIV APP 29, ¶ 33, 66 P.3d 1004, 1012, that:

In the context of extended foster care, the evidence must also show that the parent bears the culpable responsibility for the fact that the child has been in foster care for the requisite period and that the parent is not the subject of an uncorrected condition which is by its nature beyond the parent's power to correct.

[17] While termination of parental rights cases are civil actions, see, e.g., In re H.T., 2012 OK CIV APP 49, ¶ 16, 276 P.3d 1054; In re P.F., 2005 OK CIV APP 50, ¶ 25, 118 P.3d 224, the Oklahoma Supreme Court has noted the similarity between criminal law cases and termination of parental rights proceedings. See, e.g., In re Chad S., 1978 OK 94, ¶ 13, 580 P.2d 983 (For example, they both are proceedings initiated by the state, the proceedings are formal, and a significant interest is at stake.). Thus, the circumstances under which error was found or not in the giving of an Allen instruction to deadlocked juries in criminal cases is useful to our review of the instruction given in this case.
[18] See, e.g., K.H., 2021 OK 33, ¶ 29 ("Errors that are inherently prejudicial are those from which, by their nature, one of the litigants obtains beneficial prejudice. Where matters of a highly prejudicial nature have been brought before the jury, even when not manifestly motivated by bad faith, we have regarded such procedure as reversible error unless it can be affirmatively ascertained from the record that no harm resulted therefrom. (internal quotation marks omitted) (citations omitted)).
[19] The parents also challenged the trial court's admission into evidence of the felony child abuse charges against them and allowing the questioning of the parents about the child abuse charges. The Court determined that evidence was not relevant to the adjudication of the children as deprived in that case and further held the admission of the criminal charge in a jury trial to terminate parental rights is overly prejudicial and, therefore, inadmissible. Id. ¶ 40.
[20] Because only questions of law were raised on appeal, we offer no opinion about the sufficiency of the evidence presented below as to the grounds for termination or the child's best interest, and no change regarding the child's adjudication as deprived and the continuance of his custody in DHS care is made as a result of our decision in this appeal.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1995 OK CR 48, 904 P.2d 110, McCARTY v. STATE
Discussed at Length
 2007 OK CR 29, 164 P.3d 208, EIZEMBER v. STATE
Discussed
 2009 OK CR 26, 218 P.3d 520, JOHNSON v. STATE
Discussed at Length
 2011 OK CR 30, 267 P.3d 114, POSTELLE v. STATE
Discussed at Length
 2018 OK CR 3, 422 P.3d 155, BROWN v. STATE
Discussed
 2018 OK CR 10, 421 P.3d 890, NICHOLSON v. STATE
Discussed
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1995 OK CIV APP 8, 895 P.2d 302, 66 OBJ 1867, McMullen v. Stevens
Discussed
 2003 OK CIV APP 29, 66 P.3d 1004, IN THE MATTER OF C.R.T.
Discussed
 2005 OK CIV APP 50, 118 P.3d 224, IN THE MATTER OF P.F.
Discussed
 2012 OK CIV APP 49, 276 P.3d 1054, IN THE MATTER OF H.T.
Discussed
 1999 OK CIV APP 128, 993 P.2d 137, 70 OBJ 3808, In Re: M.C.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1940 OK 44, 98 P.2d 894, 186 Okla. 493, KAHAN v. PURE OIL CO.
Discussed
 1997 OK 60, 940 P.2d 201, 68 OBJ 1635, Cary v. ONEOK, Inc.
Discussed
 1956 OK 91, 303 P.2d 297, THREADGILL v. ANDERSON
Discussed
 1966 OK 31, 412 P.2d 155, AGEE v. GANT
Discussed
 1972 OK 97, 499 P.2d 380, TEAGUE v. UNITED TRUCK SERVICE
Discussed
 2006 OK 96, 154 P.3d 1240, TALIAFERRO v. SHAHSAVARI
Discussed
 2015 OK 36, 373 P.3d 1022, IN THE MATTER OF T.T.S.
Discussed
 1978 OK 94, 580 P.2d 983, MATTER OF CHAD S.
Discussed at Length
 2021 OK 33, IN THE MATTER OF K. H.
Discussed
 1981 OK 131, 637 P.2d 66, C. G., Matter of
Discussed
 2000 OK 82, 13 P.3d 484, 71 OBJ 2668, IN THE MATTER OF A.M. & R.W.
Discussed
 1998 OK 53, 967 P.2d 1180, 69 OBJ 2341, HOLM-WADDLE v. HAWLEY
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 1130, Renumbered as 10 O.S. § 7006-1.1 by Laws 1995, HB 1978, c. 352, § 199, emerg. eff. July 1, 1995
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 577.2, Use of Instructions - Requests - Copies
Discussed at Length
 12 O.S. 582, Request for Information after Retirement
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA